No. 37,770

THE STATE OF KANSAS, ex rel., JOHNNIE FRANK, County Attorney of Sedgwick County, *Plaintiff*, v. WILLIAM C. SALOME, JR., L. A. DONNELL, EARL K. DUKE, FLOYD AMSDEN and RUSSELL JUMP, as Members of the Governing Body, the Board of Commissioners of the City of Wichita, Sedgwick County, and C. C. ELLIS, City Clerk of said City, *Defendants*.

(208 P. 2d 198)

Opinion filed July 9, 1949.

*W. D. Jochems* and *J. Wirth Sargent,* both of Wichita, of counsel, argued the cause, and *Johnnie Frank,* county attorney, was with them on the briefs for the plaintiff.

*W. F. Lilleston* and *Wayne Coulson,* both of Wichita, argued the cause, and *L. A. Hasty,* county counselor, and *Fred W. Aley,* city attorney, *L. E. Curfman,* assistant city attorney, and *Howard T. Fleeson,* all of Wichita, were with them on the briefs for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is a motion for a writ of mandamus. The action was brought in the name of the state of Kansas on the relation of the county attorney of Sedgwick county. The city commissioners and the city clerk of Wichita were defendants. The state has been represented throughout the litigation by special counsel. Ordinarily an alternative writ is issued as a matter of course since it serves about the same purpose in a mandamus action as a summons in an ordinary action. However, sometime before this motion was filed counsel for defendants had indicated to the chief justice that they would like to be heard before an alternative writ was issued. When counsel for the plaintiff learned of this they postponed the filing of the motion for a writ for some days and on May 24, 1949, after

notice, all parties appeared before the court and argued the question of whether an alternative writ should issue. At that time the plaintiff also asked for an order staying all proceedings in a flood control project in Sedgwick county pending the outcome of the litigation. We denied the stay order and since the question was a public one set the case down for reargument on the merits at the June session. In the meantime, the defendants filed an answer to plaintiff's motion. The matter was submitted on June 9, 1949.

We shall consider the question of whether the pleadings and admitted facts show an alternative writ should issue. This is one phase of litigation growing out of efforts of the city of Wichita and Sedgwick county to coöperate with the federal government, especially the War Department, in constructing a flood control project in Sedgwick county. We had certain phases of this litigation before us in *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530. In that case we held the state statute, under which the proceedings to construct the flood control project were instituted, did not violate either the state or federal constitution. This present action was brought on by the passage by the city of Wichita of ordinance No. 15-270 on June 22, 1948.

The motion, after identifying the parties as the county attorney on one side and the city of Wichita and the members of the board of commissioners and the city clerk on the other, alleged that on June 22, 1948, the governing body of the city enacted ordinance No. 15-270, a copy of which was attached to the petition. The petition then alleged that a document referred to in the ordinance as "Project Report, Wichita and Valley Center Flood Control Project" provided for one plan and was referred to as the "Big Ditch Plan" and also another plan utilizing the Arkansas River Channel, and both had been declared to be engineeringly feasible by the Corps of Engineers, and the ordinance did not designate which plan was to be utilized; that on March 16, 1949, qualified electors of the city filed a petition with the clerk signed by 7,522 electors, which requested the adoption of an ordinance repealing ordinance No. 15-270; that all these petitions complied with the provisions of G. S. 1935, 12-107; that the number of signatures exceeded twenty-five percent of the votes cast in the city at the general election held April 1, 1947; that upon the filing of these petitions it became the duty of the defendant commissioners to require the city clerk to certify as to their sufficiency and it became the duty of the clerk to certify as to their

sufficiency; that the petition contained more than 4,133 names and it became the duty of the city commissioners to either pass ordinance No. 15-270 or to submit the question of whether it should be repealed at a special election unless a regular election intervened. The petition then alleged that the defendant commissioners misconceiving their duties had wholly disregarded the petitions, had not referred them to the city clerk and had refused to either pass the ordinance or to call an election; that the defendants acting in their representative capacities had failed to follow the mandatory provisions of G. S. 1935, 12-107, and threatened to continue to make the improvement known as the Army Engineers Flood Control Project and threatened to sell bonds of the city for the purpose of paying the costs thereof. The petition alleged that plaintiff had no plain and adequate remedy at law and that unless the writ of mandamus was issued the taxpayers of Wichita would be deprived of their property without due process of law and would be required to pay taxes on bonds issued under ordinance No. 15-270.

The petition then alleged that a regular city election had been held since the first petitions were filed and a total of 24,407 votes were cast at that election. On this account allegations were made setting out certain general legal questions that would arise if a special election were called at the present time.

The prayer of the petition was for an alternative writ of mandamus against the board of commissioners and the city clerk directing the commissioners to direct the city clerk to certify whether the petitions were sufficient and directing the city clerk to follow the order of the commissioners and issue a certificate, as required by G. S. 1935, 12-107, and if the clerk did issue his certificate of sufficiency directing the commissioners to either pass an ordinance repealing ordinance No. 15-270 or cause an election to be held or to show cause why they had not done so, or why a peremptory writ should not issue. The petition further prayed that we issue an order staying any further action under ordinance No. 15-270 in order that the matter might be held in *status quo;* that we declare the law as to the number of names required and that a referee be appointed to determine the facts should an issue of fact arise.

The outcome turns upon what construction is to be given ordinance No. 15-270—hence it is set out here in full. It is, as follows:

"ORDINANCE No. 15-270

"An Ordinance Authorizing the Making of an Improvement Commonly Known and Referred to As the Army Engineers Flood Control Project Under and Pursuant to G. S. 1947 Supp. 19-3301 Through 19-3307.

"Be It Ordained by the Board of Commissioners of the City of Wichita, Kansas:

"SECTION 1. That it is a public necessity to make an improvement commonly known and referred to as Army Engineers Flood Control Project for the protection from floods of the City of Wichita, Kansas, under and pursuant to G. S. 1947 Supp. 19-3301 through 19-3307, said City of Wichita, Kansas, being located in Sedgwick County, Kansas, a county traversed and touched by the Arkansas River. That said improvement shall consist of various dikes, levees, flood ways, diversion channels, control structures, embankments, river deepening, straightening, widening, narrowing and filling, all as set out and described in general terms in a document issued by the Corps of Engineers, United States Army, entitled Definite Project Report, Wichita and Valley Center Flood Control Project, dated August, 1945.

"SECTION 2. That it is hereby found and determined that the improvement aforesaid is for the general benefit of the City of Wichita, Kansas, and that the cost thereof be paid by the city at large and that to pay said cost, when ascertained, bonds of said city be issued in accordance with the provisions of G. S. 1947 Supp. 19-3307.

"SECTION 3. That the City Manager and all subordinate employees be and they are hereby authorized and directed to prepare a preliminary estimate of the cost to the City of Wichita of such improvement and to present such preliminary estimate to this body for its approval and thereafter to proceed with all necessary action for the making of the improvement described in Section 1 hereof.

"SECTION 4. This ordinance shall take effect and be in force from and after its adoption and publication once in the official city paper."

By the time the case came on to be heard finally on June 9, 1949, the defendants as we have noted filed an answer and return. They admitted the official position of the parties and the enactment of ordinance No. 15-270. They also admitted that the document entitled "Definite Project Report, Wichita-Valley Center Flood Control Project" contained alternative plans but alleged that by adoption of a resolution on August 14, 1945, a copy of which was attached to the answer, the city adopted the plan of utilizing the Big Slough-Cowskin Floodway and contracted with the United States for construction of improvements utilizing that plan and no other. The answer admitted the filing of the petitions and that the city clerk had not certified to their sufficiency but alleged that he had not so acted because of any direction of the board of commissioners and alleged that until the petitions were certified the commissioners

had neither the duty nor the authority to take any action and denied that the failure of the clerk to certify as to the sufficiency of the petitions was the result of any action of the commissioners. The answer then alleged that on August 14, 1945, the city commissioners adopted two resolutions, copies of which were attached to the answer, and that in these resolutions the board announced its legislative policy declaring that the construction of flood control works for the prevention of flood hazards in the Arkansas, Little Arkansas rivers, and Chisholm creek was necessary for the public welfare of the city and it was a public necessity to sponsor the Army's Big Slough-Cowskin Floodway Plan for the prevention, control, or mitigation of floods or flood hazards along these water courses and that in these resolutions the city commissioners agreed to—

"(a) Provide without cost to the United States the lands, rights-of-way and easements necessary for the construction of the project.

"(b) Hold and save the United States free from all claims for damages due to the construction works.

"(c) Maintain and operate all of the works after completion in accordance with regulations prescribed by the Secretary of War."

The answer then alleged that these resolutions were forwarded through channels to the secretary of war and on February 25, 1946, the secretary of war accepted the proposals contained in the resolutions and thereby a contract between the city of Wichita and the United States came into being. A copy of the correspondence was attached to the answer.

The answer further alleged that on April 22, 1947, the board of commissioners adopted and published a resolution readopting the resolutions of August 14, 1945. A copy of that resolution was attached to the petition. The answer then alleged that on March 22, 1948, in reliance upon the contract between the United States and the city of Wichita, the board of county commissioners of Sedgwick county by resolution agreed as to that portion of the flood control project known as the Big Slough Floodway, the board would undertake the same obligation the city had taken with reference to the other part of the project. A copy of this resolution was attached to the petition. The answer further alleged that this agreement was accepted by the United States. The answer further alleged that on March 30, 1948, the board of commissioners of the city of Wichita adopted a resolution in which the adoption of all previous resolutions was referred to and agreed that the acceptance of the assurances above stated on the part of the county by the

United States should not in any manner impair or lessen the assurances made by the city of Wichita in the resolutions that had been adopted that have been referred to heretofore. The answer then alleged that this resolution was transmitted to the United States; that for the purpose of carrying out the contracts between the city of Wichita and the United States the commissioners on June 22, 1948, adopted ordinance No. 15-270 directing its employees to proceed with all the necessary action for the making of the improvement. The answer then alleged—

"Said ordinance established no legislative policy, but simply directed the carrying out of contracts long before entered into between the City and the United States, in which contracts the legislative policy of the City had long before been stated. Repeal of the ordinance would leave such contracts in force without in any way altering the City's obligations under such contracts."

The answer then alleged that pursuant to the contracts between the city and the United States and between Sedgwick county and the United States each have expended many thousands of dollars; condemnation proceedings were in progress; that prior to June 9, 1949, the city would have acquired the necessary land for a portion of the project; that prior to June 15, 1949, the county would have acquired the necessary lands for the entire portion of the project; that the city had been informed by the Corps of Engineers that it expected to let contracts for construction in June, 1949; that the actual construction would commence in September, 1949; that the city attorney on April 8, 1949, gave the city clerk his written opinion that ordinance No. 15-270 was not subject to the provisions of G. S. 1935, 12-107; that the clerk had no duty to perform in regard to the petitions; that copies of the opinion were furnished to counsel for plaintiff. The answer further alleged that the city clerk took no action with respect to the petitions on account of this written opinion and alleged that the ordinance was not within the provisions of G. S. 1935, 12-107, and the city clerk had no duty to perform in regard to it. The answer further alleged that if ordinance No. 15-270 was legislative in character any legislative policy therein stated would be a reassertion of the policy adopted August 14, 1945, and frequently reaffirmed thereafter; that the attempt made on March 16, 1949, to compel a referendum vote upon those resolutions was not timely and petitioners were precluded from securing such referendum by reason of their laches; that if the repeal of ordinance No. 15-270 should alter or impair the obligations of the city of Wichita under its contracts with the United States such at-

tempted repeal would be void for the reason it would impair the obligations of the contract. The resolutions pleaded in the answer are as follows:

"Exhibit 'A'

"resolution

"A Resolution Declaring That in the Opinion of the Board of Commissioners of the City of Wichita, the Construction of Flood Control Works Under the Provisions of Chapter 391, of the Session Laws of Kansas for 1945 is Necessary for the Public Welfare.

"*Be It Resolved by the Board of Commissioners of the City of Wichita, Kansas:*

"Section 1. That it is hereby declared to be the opinion of the Board of Commissioners of the City of Wichita that the construction of flood control works for the prevention, control and mitigation of floods or flood hazards upon or along the Arkansas and Little Arkansas Rivers and Chisholm Creek is necessary for the public welfare of the City of Wichita, and that the Board of Commissioners of the City of Wichita hereby declare it to be a public necessity to sponsor a plan for the prevention, control or mitigation of floods or flood hazards upon or along the Arkansas and Little Arkansas Rivers and Chisholm Creek as prepared by the Corps of Engineers of the United States Army, which is more particularly described in a copy of a Resolution attached and made a part hereof.

"Section 2. This Resolution shall take effect and be in force from and after its adoption and publication once in the official City paper.

"Adopted at Wichita, Kansas, this 14th day of August, 1945.

"Phil H. Manning
"Mayor

"Attest:
"C. C. Ellis
"City Clerk
"(Seal)

"State of Kansas, Sedgwick County, City of Wichita, ss:

"I, C. C. Ellis, City Clerk of the City of Wichita, Kansas, hereby certify that the above is a true and correct copy of a resolution adopted by the Board of Commissioners of the City of Wichita, Kansas, on August 14, 1945, published in the Wichita Beacon on August 15, 1945, and on file in this office. "Given under my hand and seal ......................................
......................................
"City Clerk

"Exhibit 'B'

"resolution

"A Resolution Declaring That the City of Wichita, Kansas, Will Meet the Requirements of the Provisions of Chapter 391 of the Session Laws of Kansas for 1945 in the Entering Into an Undertaking with the United States of

America: Contracting with the Federal Government in the Name of the City for the Keeping in Repair and Operating of Flood Control Works, and the Furnishing of Necessary Lands, Rights of Way and Easements for Such control Works.

"WHEREAS, the Corps of Engineers of the United States Army at the requests of interested citizens of the City of Wichita have developed various alternative plans for the construction of flood control improvements to protect the City of Wichita in Sedgwick County, Kansas, from floods upon or along the Arkansas and Little Arkansas Rivers and Chisholm Creek, and

"WHEREAS, these alternative plans have been presented to responsible officers of both the City of Wichita and Sedgwick County, Kansas, for their study and comment, and

"WHEREAS, after a full and complete discussion of the various plans, the Board of Commissioners of the City of Wichita have agreed that a plan of improvement similar to that authorized by the Flood Control Act of June 22, 1936, and selected in House Document No. 308, 74th Congress First Session, is the most desirable plan for the protection of the City of Wichita, (and as is also described by the Corps of Engineers of the United States Army for Valley Center) Kansas, and best meets the needs and desires of the said, The City of Wichita, and

"WHEREAS, the Board of Commissioners of the City of Wichita, Kansas, have approved the aforesaid plans, and have instructed the City Manager of the City of Wichita to notify the District Engineer, United States Engineer Office, Tulsa, Oklahoma, representing the Corps of Engineers in this area, that the City of Wichita accepts and approves the aforesaid plan for the protection of the City of Wichita, (and is also described by the Corps of Engineers of the United States Army for Valley Center), Kansas; provided that the route of the Big Slough Floodway as included in that plan be modified to also intercept and provide protection from flood waters on Cowskin Creek in addition to the area covered by the authorized City of Wichita project; and that said modification be made in the route of the proposed Little River Arkansas Floodway and the Chisholm Creek diversions as presented to the City of Wichita by letter of June 23, 1945, signed by D. P. Grosshans, Lt. Col., Corps of Engineers, Directors of Engineering Division.

*"Now Therefore Be It Resolved by the Board of Commissioners of the City of Wichita, Kansas:*

"SECTION 1: That the City of Wichita, Kansas, under authority of Chapter 391 of the Session Laws of Kansas for 1945, hereby agrees as follows:

"1. To provide without cost to the United States the lands, rights-of-way and easements necessary for the construction of the project.

"2. To hold and save the United States free from all claims for damages due to the construction works.

"3. To maintain and operate all of the works after completion in accordance with the regulations prescribed by the Secretary of War.

"SECTION 2: This Resolution shall take effect and be in force and after its adoption and publication once in the official city paper."

At the outset, it may be stated the provisions of G. S. 1935, 12-

107, being the so-called initiative and referendum statute, applies only to what are designated as legislative ordinances as distinguished from administrative ones. (See *State, ex rel., v. City of Kingman,* 123 Kan. 207, 255 Pac. 645; *State, ex rel., v. Morton,* 128 Kan. 125, 276 Pac. 62; 43 C. J. 585; 37 Am. Jur. 845; 2 McQuillin Municipal Corporations 792, 122 A. L. R. Note 769.

Our inquiry turns to whether ordinance No. 15-270 is legislative or administrative. We treated such a question in *State, ex rel., v. Charles,* 136 Kan. 875, 18 P. 2d 149. There we quoted with approval the rule laid down in 43 C. J. 585, as follows:

"Actions which relate to subjects of a permanent or general character are considered to be legislative, while those which are temporary in operation and effect are not. Acts constituting a declaration of public purpose, and making provisions for ways and means of its accomplishment, may be generally classified as calling for the exercise of legislative power. Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence."

The rule is stated in *Monahan v. Funk,* 137 Ore. 580, 3 P. 2d 778, as follows:

"In determining whether the ordinance in question was legislative or administrative, we notice that the authorities in the books are in accord that actions which relate to subjects of a permanent or general character are considered to be legislative, while those which are temporary in operation and effect are not. Acts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared, either by the legislative municipal body, or such as devolved upon it by the organic law of its existence. The form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative."

See, also, *Lewis v. City of South Hutchinson,* 162 Kan. 104, 174 P. 2d 51.

Was the enactment of ordinance No. 15-270 necessary to carry out a legislative policy of the city already declared? A consideration of this question takes us to an examination of all the surrounding facts and circumstances, together with certain activity of Wichita, Sedgwick county, and the United States.

The story starts perhaps with the enactment of the Flood Control Act of 1936 by the National Congress—House Document No. 308, 74th Congress, First Session, 33 U. S. C. A., section 701, A through H.

By this enactment the federal government embarked upon a general program of flood control throughout the nation.

The first section, in part, stated it to be the sense of congress that flood control was a proper activity of the federal government in coöperation with the states and their political subdivisions.

The second section provided that flood control investigations should be under the direction of the war department, and the supervision of the chief of engineers.

Section 3 provided, amongst other things, that no money appropriated under authority of the act should be expended "on the construction of any project until states, political subdivisions thereof, or other responsible local agencies have given assurances satisfactory to the Secretary of War that they will (2) provide without cost to the United States all lands, easements, and rights-of-way necessary for the construction of the project, except as otherwise provided herein: (b) hold and save the United States free from damages due to the construction works; (c) maintain and operate all the works after completion in accordance with regulations prescribed by the Secretary of War."

The fourth section provided authority for states to enter into compacts.

The fifth section provided, in part, as follows:

"Sec. 5. That pursuant to the policy outlined in sections 1 and 3, the following works of improvement, for the benefit of navigation and the control of destructive flood waters and other purposes, are hereby adopted and authorized to be prosecuted, in order of their emergency as may be designated by the President, under the direction of the Secretary of War and supervision of the Chief of Engineers in accordance with the plans in the respective reports and records hereinafter designated:"

Then followed a brief description of various projects in many of the river basins of the nation. There were about twenty-one on Kansas rivers. One of them is as follows:

"Wichita and Valley Center, on Arkansas River in Kansas and vicinity: Levees and floodway to protect people, city property, and environs; House Document Numbered 308, Seventy-four Congress, first session; estimated construction cost, $2,603,100; estimated cost of lands and damages, $1,597,100."

This is the project with which we are concerned. It may be seen at a glance this project is merely a small portion of a general flood control plan. The list included about a thousand or more projects scattered all over the nation. For each project there was provided an estimated cost item. Clearly there had been some preliminary

investigations by some federal agency before this act was passed.

It will be noted that all these projects were authorized and directed to be prosecuted. The only limitation was that the president should designate the order of their emergency under the direction of the secretary of war. The important thing to remember is that this project is part of a comprehensive plan for the entire nation and the entire plan, including each project, is under the supervision of the secretary of war, also a preliminary survey and estimate of the cost had been made by the engineers corps before the act was passed.

Our examination next goes to our legislature. G. S. 1947 Supp. 19-3301 to 19-3307, was enacted as chapter 391 of the Laws of 1945, and amended in 1947. It was entitled "An Act Relating To The Construction of Flood Control Works In Certain Counties And Cities."

The first section authorized the county commissioners in any county traversed or touched by the Arkansas river and in which the corps of engineers of the United States army should be authorized by congress to construct works for the prevention of floods, if in their opinion the construction was necessary for the public welfare "to (a) Enter into an undertaking in the name of the county to hold the United States of America free of any damage to persons or property resulting during construction or after the completion thereof, (b) to contract with the federal government in the name of the county that when said work is completed the said county will maintain, keep in repair, and operate such flood control works, and (c) to furnish all necessary lands, rights and easements, as provided in section 2 of this act."

The second section gave the board of county commissioners of those counties where it was required by the federal government as a condition for the construction of flood control works authority to acquire such rights of way or easements as might be necessary by purchase, gift or the exercise of eminent domain.

Section 3 gave counties the power to issue bonds for this purpose without an election, the aggregate of such bonds not to be in excess of one-half of one percent of the assessed valuation of the county. It also provided that these bonds should not be included in any restriction upon the amount of bonded indebtedness of the county contained in any other law then affecting said county.

The fourth section provided that any damage or expense to which

the county might be put by having complied with the undertaking to protect the United States, as provided for in the first section, might be paid for from any funds on hand or from the sale of the bonds issued under the provisions of the act.

The fifth section made a provision for maintaining and operating the flood control works after they should be constructed by an annual tax levy not to exceed one mill for that purpose.

The sixth section provided as follows:

"That for the purpose of carrying out any of the provisions of this act, the board of county commissioners are hereby authorized to enter into agreements with the United States of America or any department or agency thereof and with any city or drainage district, or other county or body politic, as well as with any person, firm or individual whenever it shall be necessary as a condition to the construction of flood control works hereunder, and for the maintenance, repair or operation thereof."

The seventh section provided that except as otherwise expressly provided all of the powers conferred by the preceding sections on the counties were also conferred upon any city located in such county, and it gave the governing body of the cities power to enter into undertakings in a like maner and for like purposes, as the board of county commissioners were authorized to make agreements in the name of the county and might acquire lands, rights of way, and issue general obligation bonds of the city to pay the costs thereof, but the total aggregate of such bonds should not be in excess of one and one-half percent of the total assessed valuation of the city. The section further provided that the city might issue additional general obligation bonds for such purpose not in excess of three and one-half percent of the total tangible valuation of the city, and provided that before such additional bonds might be issued the question should be submitted to the qualified electors of the city and further that the total aggregate of such bonds should not be in excess of five percent of the total assessed valuation of the city, and provided that such bonds should not be subject to any restrictions upon the total amount of bonded indebtedness of the city. The section further provided that funds received from the sale of bonds might be used to pay any loss, damage or expenditures for which the city might be liable and provided for an annual tax levy not to exceed one mill in addition to other levies for maintaining the flood control works after they should be built and made it the duty of the governing body of the city to keep such works in serviceable condition.

It is clear the above act was enacted to enable cities such as Wichita and counties such as Sedgwick to take advantage of the proposed project that was authorized in the National Flood Control Act of 1936.

As has been heretofore noted, we considered this statute in *Board of County Comm'rs v. Robb,* supra, and held that it did not violate any provision of either the state or federal constitutions. Under that title, we considered two applications for writs of mandamus, one by the *Board of County Comm'rs of Sedgwick County v. Robb* and the other is the *City of Wichita v. Robb* and other parties. We recognized in that opinion that actually in the construction of the flood control project in Sedgwick county, the county and city were each coöperating with the federal government and this had the effect of the municipalities coöperating with each other. At any rate, there is no contention here but that the county has assumed the responsibility of providing the right of way and other obligations provided for in the federal act for part of the flood control project while the city has made the same assurances as to the other portions of the project.

This takes us up to the activity of the city following the enactment of chapter 391 of the Laws of 1945. It will be remembered the Federal Flood Control Act provided that no money should be appropriated until certain assurances were made to the secretary of war by the political subdivisions. It also provided that these works should be carried on in coöperation with the state and its political subdivisions under the direction of the secretary of war and the supervision of the war department. Chapter 391 provided that before anything should be done the board of county commissioners and the governing body of the city should find the project to be "necessary for the public welfare."

On August 14, 1945, just about as soon as it could after Chapter 391 became effective by being published in the statute book, the city of Wichita adopted a resolution in which it found it was the opinion of the board of commissioners of the city of Wichita that the project we are considering was necessary for the public welfare and it was declared a public necessity to sponsor the plan. On the same date the city commissioners by the adoption of another resolution, which has been heretofore set out in this opinion, recited that the corps of engineers had developed alternate plans for flood control, described the one upon which they had agreed, and recited it had

instructed the city manager to so inform the corps of engineers. The resolution then provided: ·

"*Now Therefore, Be It Resolved by the Board of Commissioners of the City of Wichita, Kansas:*

"SECTION 1: That the City of Wichita, Kansas, under authority of Chapter 391 of the Session Laws of Kansas for 1945, hereby agrees as follows:

"1. To provide without cost to the United States the lands, rights-of-way and easements necessary for the construction of the project.

"2. To hold and save the United States free from all claims for damages due to the construction works.

"3. To maintain and operate all of the works after completion in accordance with regulations prescribed by the Secretary of War.

"SECTION 2: This Resolution shall take effect and be in force from and after its adoption and publication once in the official city paper.

"ADOPTED at Wichita, Kansas, this 14th day of August, 1945.

"PHIL H. MANNING<br>
"Mayor

"ATTEST:

"C. C. ELLIS

"City Clerk

"(SEAL)"

Such was the assurance Section 3 of the Flood Control Act of 1936 provided must be given by the municipality. With that the two resolutions were forwarded to the war department through channels. Then ensued a somewhat lengthy correspondence with the corps of engineers and various officers representing it as to some details of the project but finally on February 25, 1946, not quite a year after the project was approved by the secretary of war, that could mean nothing else but that the secretary of war was satisfied with the assurances that had been given by the city as to the three requirements provided for in the flood control act. For some reason on April 27, 1947, the board of commissioners of the city of Wichita passed a resolution reiterating these assurances.

The question is really whether by passing of the resolutions in 1945, to which attention has already been called, the city of Wichita declared a legislative policy which did not require any further legislation to carry it into effect. The plaintiffs here who are asking for the writ of mandamus argue vigorously that these resolutions could not be given that characterization because they did not arise to the dignity of a contract, that is, they argue the United States has not yet agreed to appropriate any money and the project cannot actually be carried out until the money is appropriated and

made thereby available—hence the agreement on the part of the city stated in these resolutions was unilateral, lacked mutuality and no actual contract came into being. We cannot deal so lightly with the solemn declarations of the federal agencies, to which reference has been made. In the first place, the flood control act of 1936 is an outright declaration of congress that certain projects should be adopted and authorized to be constructed.

The federal constitution, article I, section 7, provides:

"All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."

The Rules of the House provide in section 2 of Rule XXI, as follows:

"No appropriation shall be reported in any general appropriation bill, or be in order as an amendment thereto, for any expenditure not previously authorized by law, unless in continuation of appropriations for such public works and objects as are already in progress. Nor shall any provision in any such bill or amendment thereto changing existing law be in order, except such as being germane to the subject matter of the bill shall retrench expenditures by the reduction of the number and salary of the officers of the United States, by the reduction of the compensation of any person paid out of the Treasury of the United States, or by the reduction of amounts of money covered by the bill: *Provided,* That it shall be in order further to amend such bill upon the report of the committee of any joint commission authorized by law or the House Members of any such commission having jurisdiction of the subject matter of such amendment, which amendment being germane to the subject matter of the bill shall retrench expenditures."

Hence it will be seen that before any money could be appropriated to construct this project it was necessary that the expenditure be authorized in another bill, such as the Flood Control Bill, separate from any appropriation bill. Furthermore, the first paragraph of Rule XVI of the Senate provides:

"1. All general appropriation bills shall be referred to the Committee on Appropriations, and no amendments shall be received to any general appropriation bill the effect of which will be to increase an appropriation already contained in the bill, or to add a new item of appropriation, unless it be made to carry out the provisions of some existing law, or treaty stipulation, or act, or resolution previously passed by the Senate during that session; or unless the same be moved by direction of a standing or select committee of the Senate, or proposed in pursuance of an estimate submitted in accordance with law."

Furthermore, the city of Wichita dealt with the only agencies provided by the statute, that is, the war department and the corps of engineers. Are we to say that the approval given by the corps

of engineers and the secretary of war carried no binding effect at all, and are to be given no weight by us in the consideration of this question? We do not feel that we should treat such declarations so lightly. We have four separate entities here, that is, the federal government, the state, the county, and the city. The federal government in deciding to carry on the flood control projects throughout the nation decided the political subdivisions that were to receive the benefit of the expenditure of federal funds should provide rights of way, should hold the United States free from damages, and should agree to maintain the projects after they were built. If we say the action taken by the city of Wichita in the early resolution did not bind the city to that policy, then it would be impossible for any municipality in Kansas to ever get the benefit to be had from the expenditures of federal funds in carrying on flood control projects. The practice has become too general throughout the nation for us to take that responsibility. We detect in the argument of plaintiffs here a thought that perhaps they know better how the flood problems should be dealt with in Sedgwick county than do the city and county and army engineers. That seems to be the question they would submit to the voters at this stage in the proceedings. Such an election if given the weight contended for by plaintiffs might well have the effect of halting any flood control project in Sedgwick county since it clearly appears the present project is the one and the only one that the army engineers would approve. According to the flood control act it can only be built upon their approval. Actually ordinance No. 15-270 is little more than a statement in a condensed form of the policy adopted by the city in its earlier resolutions. It should not be classified as a legislative ordinance and G. S. 1935, 12-107, does not apply to it. Should this election be held and the voters decide for its repeal, such repeal would have no bearing on the effectiveness of the earlier resolutions.

The writ will be denied.