No. 37,935

STATE OF KANSAS, ex rel., HAROLD R. FATZER, Attorney General, *Plaintiff*, v. WILLIAM C. SALOME, JR., L. A. DONNELL, EARL K. DUKE, FLOYD AMSDEN and RUSSELL JUMP, as members of the governing body, the Board of Commissioners of the City of Wichita, Sedgwick County, Kansas, and C. C. ELLIS, City Clerk of said city, *Defendants*. (The Board of County Commissioners of Sedgwick County, Kansas, Intervenors.)

(220 P. 2d 192)

Opinion filed July 8, 1950.

*W. D. Jochems* and *J. Wirth Sargent,* both of Wichita, argued the cause, and *Harold R. Fatzer,* attorney general, was with them on the briefs for the plaintiff.

*Wayne Coulson,* of Wichita, argued the cause, and *Fred W. Aley,* city attorney, *L. E. Curfman,* assistant city attorney, and *Howard T. Fleeson,* of Wichita, were with him on the briefs for the defendants.

*W. F. Lilleston,* of Wichita, argued the cause, and *Robert H. Nelson,* county counselor, was with him on the briefs for the intervenors.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel the city officials of Wichita to accept and examine petitions under G. S. 1935, 12-107, calling for adoption of or a referendum upon a proposed ordinance repealing two resolutions adopted by the city of Wichita on August 14, 1945, and a third resolution adopted on April 22, 1947, all pertaining to flood control works in the city of Wichita and for incidental relief.

In a preliminary way it may be said that prior to 1943 United States army engineers had made a study of flood control problems in Sedgwick county, including the city of Wichita, resulting in two plans. After conferences which need not be noted, the city of Wichita and Sedgwick county agreed upon the plan referred to at times as the Big Ditch or Army Plan, and for the performance of flood control work thereunder within the city by the city of Wichita, and without the city by Sedgwick county. Under date of August 14, 1945, the governing body of the city of Wichita adopted resolutions to proceed under the above plan and to make the commitments authorized by Laws 1945, chapter 391, which as amended appear as G. S. 1947 Supp., chapter 19, article 33. After some further negotiations, the city adopted its resolution of April 22, 1947, which reiterated and affirmed its former action. Under date of June 22, 1948, the governing body of the city enacted its ordinance No. 15-270 which declared the work to be a public necessity, found the improvement to be for the general benefit of the city and directed issuance of bonds to pay the costs to be borne by the city. The county had meanwhile adopted requisite resolutions and made commitments for performance of the project outside the city. Shortly thereafter the city, as well as the county, issued temporary notes to pay costs and submitted them to the state auditor for registration, which was denied, and mandamus actions were commenced in this court by the city and by the county, the principal question being the constitutionality of G. S. 1947 Supp., chapter 19, article 33, under which the flood control projects were being performed. Constitutionality was upheld in an opinion filed November 13, 1948, and reported in *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530. An appeal to the Supreme Court of the United States was dismissed on April 25, 1949, for want of a substantial federal question. On May 24, 1949, the state on the relation of the county attorney of

Sedgwick county commenced an action in this court against the governing body of the city to compel a referendum on repealing Ordinance No. 15-270 above mentioned. This court held that ordinance to be administrative and not legislative in character and therefore not subject to referendum under G. S. 1935, 12-107, the opinion being filed July 9, 1949, and appearing as *State, ex rel., v. Salome,* 167 Kan. 766, 208 P. 2d 198. In that opinion may be found copies of the two resolutions of August 14, 1945, which are involved in the action now before us and reference is made thereto. Thereafter on October 5, 1949, another action was commenced in this court by the state on the relation of the county attorney of Sedgwick county to compel a referendum on the question of repeal of the above mentioned resolutions of August 14, 1945, and April 22, 1947. This action was dismissed on October 19, 1949, as being prematurely instituted. On December 8, 1949, the state on the relation of the attorney general commenced the present action in this court. It is rather clear from all the litigation mentioned and from the arguments made from time to time that the controversy is not so much whether there be a flood control project, but what plan should be followed.

It is not necessary that we set forth in detail the allegations of the petition. For our purposes the petition alleged the adoption of the resolutions of August 14, 1945, and of April 22, 1947, heretofore mentioned and that eighty-five petitions signed by qualified electors of the city, requesting the adoption of an ordinance repealing and rescinding the three resolutions, were filed with the city clerk on October 3, 1948, in pursuance of G. S. 1935, 12-107; that the petitions were signed by 6,575 qualified electors which number exceeds twenty-five percent of the entire vote cast for all candidates for commissioner at the last general municipal election; that it became the duty of the defendant commissioners to require the city clerk to certify as to the sufficiency of the petitions, and if the petitions contained 6,102 signatures of qualified electors, it then became the duty of the city commissioners to pass the proposed ordinance without alteration within twenty days or to call a special election; that the city commissioners met October 4, 1949, in regular session and notwithstanding the filing of the petitions ignored the duties imposed on them by the above statute. Then follow allegations concerning the second action of *State, ex rel., v. Salome,* previously referred to, an attempt to file additional petitions on October 18, 1949,

on which date the city clerk certified to the city commissioners that the petitions were numerically insufficient; then follow allegations concerning the tender of additional petitions, the refusal of the city clerk to receive them, the failure of the city commissioners to refer the petitions to the city clerk; the studied efforts of the city commissioners to prevent a vote on the proposed ordinance, and other allegations which include requests for declaratory judgments as to filing additional petitions and as to identification of signers with the registration lists will be referred to later if necessary. The prayer is that the city commissioners be ordered to direct the city clerk to accept and examine all of the petitions submitted and certify whether they are sufficient and contain the names of 6,102 qualified electors, and to issue his certificate as required by G. S. 1935, 12-107, and if the clerk shall issue his certificate of sufficiency that the city commissioners pass the proposed ordinance or cause an election to be called as provided by law. Other portions of the prayer will not be noticed here.

The title of the proposed ordinance is "An Ordinance Relating to Flood Control, Repealing and Rescinding," three resolutions later mentioned, and the gist of the ordinance is that the board of commissioners of the city now determines that the city should not be subjected to the "onerous, expensive, wasteful, unnecessary and immaterial Big Ditch or Army Plan" of so-called flood control which would take about 6,500 acres of valuable land out of production and entail future damage actions, and that the board sees fit to refuse to proceed with any and all contracts involving flood control, sees fit to refuse to proceed with any and all contracts it may have entered into under and by virtue of G. S. 1947 Supp. 19-3301 to 19-3307, preferring to answer in damages, if any, for any resulting loss to the other party to any such contract, rather than to carry out a course which it now determines not to be for the best interest of the city and which it now determines would be much more expensive than any damages which might be assessed against it, not admitting by such action the federal government, or any person, corporation or governmental unit will sustain any damage, and by other sections states each of the resolutions of August 15, 1945, and of April 22, 1947, previously mentioned, are to be "repealed, set aside and held for naught."

The answer of the defendants made admissions not necessary to set forth, alleged that the city clerk prior to October 17, 1949, compared 1,649 of the signatures on the petitions filed on October 4,

1949, with the registration records and found that 709 were not signatures of qualified electors and since the remaining 5,864 signatures on the petitions were numerically insufficient on any theory to constitute twenty-five percent of the entire vote cast at the preceding general municipal election the city clerk executed his certificate to that effect and delivered it on October 17, 1949, to the mayor; that on October 18, 1949, further petitions were tendered the city clerk who refused to accept the same for the reason he had previously executed and delivered his certificate of insufficiency and by reason thereof the petitions filed October 4, 1949, had become *functus officio* and the petitions filed October 18, 1949, were obviously insufficient as original petitions. We note also allegations that the petitions tendered on November 19, 1949, were accompanied by a letter demanding that they be filed as supplemental petitions; that the city clerk refused such a demand and offered to file them as original petitions and that they were not so filed. Other allegations concerning the petitions will not be here noticed. It was further alleged that in *State, ex rel., v. Salome,* supra, it was adjudicated that by the acceptance by the United States of America on February 25, 1946, the resolutions of August 14, 1945, became a contract between the city and the United States and that when the resolutions ripened into a contract on February 25, 1946, they ceased to be legislative in character and ceased to be subject to the provisions of G. S. 1935, 12-107, the referendum act; that on March 22, 1948, in reliance upon the contract between the city and the United States of America, the board of county commissioners of Sedgwick county by resolution duly adopted agreed that as to a portion of the project the board would make the statutory commitments under G. S. 1947 Supp. 19-3301, *et seq.*, and that thereafter and on March 30, 1948, the board of commissioners of the city adopted a further resolution of commitment, the details of which need not be set forth, and that pursuant to those commitments the city and the county had each expended thousands of dollars for engineering work, surveys, legal expenses and the acquisition of easements and rights of way for the flood control project, and that if the city of Wichita be permitted to repudiate the contracts by the proposed initiative ordinance all expenditures made by the city, county and the United States of America will be completely lost, and injury and damage would be sustained by the county and the United States of America; that the proposed initiative ordinance is illegal and void as a violation of article 1, section 10, of the Constitution of the United States of

America as impairing the obligation of a contract, and in no event could the contract be altered, invalidated or nullified in any proceeding to which the United States of America is not a party. After alleging dates when the resolutions were adopted and the contract resulted, defendants alleged the petitioner was precluded by laches.

Plaintiff's reply to the answer consumes 24 pages of his abstract. It contains much argumentative matter, as well as a denial of some facts alleged in the answer, and some allegations expanding and explaining allegations in both the petition and answer.

The board of county commissioners of Sedwick county was permitted to intervene and filed its answer in which is some review of the flood control project and that the county and the city had given the assurances and entered into the agreements authorized by G. S. 1947 Supp. 19-3301 to 19-3307, inclusive; that such agreements were consummated on February 25, 1946, and pursuant thereto the county had acquired title to easements and rights of way for the construction of the project at an expense of over $487,000 and incurred other expense of approximately $25,000; that the county could not devote the property thus acquired to any other purpose than flood control and unless it is so devoted not only will the flood control project be defeated and the contracts between the county. the city and the United States of America broken, but the county will also lose all of the money and property and for the redress of said injuries would have no adequate remedy at law and would suffer irreparable and incalculable loss. In a summary way it may be said the intervenors also pleaded laches; that the resolutions. by reason of subsequent contracts and undertakings had passed into an administrative state; that the city was without power by resort to the referendum statute to repeal or cancel the contract; that the legislation embodied in the flood control statutes (G. S. 1947 Supp. 19-3301, *et seq.*) supersedes and renders inapplicable the prior general provisions of G. S. 1935, 12-107, and that the efforts of the signatories on the referendum petitions mentioned in the plaintiff's petition to induce the city to repudiate and repeal its agreements with the county and the United States of America are contrary to equity and good conscience applicable in equity proceedings.

The plaintiff's reply to the intervenor's answer in effect is a denial of the legal propositions asserted in the answer.

In their briefs the parties discuss the character of relief sought and the issuance of mandamus as a matter of right; whether the plaintiff is guilty of laches; the nature of the resolutions sought

to be repealed or subjected to vote, and whether the legislative phases thereof passed when the contracts of the city and the county with the United States of America were made so that now the resolutions have only an administrative character; whether the flood control statutes call for an exercise of the police power which cannot be bargained away, or whether those statutes, under which the city, county and the United States of America have contracted, are paramount to any statutory right to invoke a referendum so far as the city is concerned; whether the petition discloses a showing of a legal duty and a failure to perform or an effort by the plaintiff to compel a breach of contract, and whether the proposed initiative ordinance will impair the obligations of contracts entered into between the various parties, as well as matters upon which a declaratory judgment is sought. In support of some of these propositions our attention is directed to many citations of authority. A full and complete discussion of each proposition would extend this opinion beyond any reasonable length, and in view of our conclusions presently to be stated such a discussion is not necessary.

The facts hereafter related, and on which we base our decision, are undisputed. As is disclosed by the pleadings, on August 22, 1945, the city adopted two resolutions, both being set out in full in *State, ex rel., v. Salome,* supra, page 772, one declaring the construction of flood control works was a public necessity, the other declaring that the city would meet the requirements of what is now G. S. 1947 Supp., chapter 19, article 33; that the corps of engineers of the United States army had developed alternative plans, which had been submitted to the responsible officers of the city and county, and after full and complete discussion the city had agreed that a named plan was most desirable and best met the needs of the city and that the city had directed its city manager to notify the army engineers of its acceptance provided that the Big Slough Floodway be modified in particulars, and resolving that the city agree to the undertakings provided by the above statute. Thereafter negotiations continued and arrangements were made for carrying out the total plan both within and without the city, the city and the county each adopting resolutions making the commitments required by the statutes mentioned. Under date of April 27, 1947, the city passed a resolution reiterating its previous assurances. Financial commitments were made by both the city and the county and the improvement had been under way for some months before the instant action was commenced in December, 1949, and the city and the

county, each carrying out its part of the whole project, had each expended large sums of money, the great part of which would be wasted or lost if one of the parties to the arrangement could or would be permitted to withdraw.

The state urges that the resolutions which the referendum petitions seek to have rescinded or put to vote are legislative in character. and there being no exceptions in the statute, that if the petitions are sufficient such a referendum must follow while the city urges that the resolutions lost their legislative character when commitments, agreements and contracts were made, and for that reason the resolutions may not now be rescinded. In our opinion it is not necessary that we isolate and decide the question so propounded, for its basis depends on the effect to be given the fact that the flood control project by reason of such commitments and agreements, is and has been under way and each party to them has expended large sums of money which it may lose if the city may in any manner default.

The state contends that a statute that has the effect of violating or repudiating an incompleted contract previously made with the state does not impair the obligation of a contract, that the obligation remains and measures the damages to the other party (*Hays v. Port of Seattle,* 251 U. S. 233, 64 L. Ed. 243, 40 S. Ct. 125) ; and that a simple breach of a contract does not amount to an act impairing the obligation of a contract (*Shawnee Sewerage & Dr. Co. v. Stearns,* 220 .U. S. 462, 55 L. Ed. 544, 31 S. Ct. 452) ; and applying that reasoning to the case before us argues that if the governing body of the city enacts the proposed ordinance, or if it is submitted and adopted the .remedy of contractors and third parties affected is a suit in damages against the city and that the proposed ordinance recognizes such a remedy. In support of its contention that the city may repudiate its contracts and agreements the state relies on *Construction Co. v. Sedgwick County,* 100 Kan. 394, 164 Pac. 281. In that case bonds had been voted for the erection of a jail, and a contract was thereafter made with the plaintiff who started performance by purchasing materials and equipment. Two newly elected commissioners took office, and the board then notified the plaintiff it had cancelled the contract. Plaintiff sought to compel performance by mandamus. Reference is made to the opinion for consideration of other contentions entering into the final result, but upon the question of the right of repudiation this court held:

"Where public officers who have entered into a contract in that capacity re-

fuse to recognize its obligations solely by reason of a mistaken view of a pure question of law, their compliance with it may be enforced by mandamus; but it does not follow that where the controlling body of a municipality, in the exercise of its judgment as to public policy, sees fit to refuse to proceed with a contract, preferring to answer in damages, it can be held to specific performance by a writ of mandamus." (Syl. ¶ 1.)

A reading of the above decision will disclose that no consideration was given to repudiation of a contract as affecting rights of third parties or of any comprehensive plan of public improvement in which the right of another municipality was involved.

We here note that in *State, ex rel., v. Linn County*, 113 Kan. 203, 213 Pac: 1062, where the rule of the last cited case was recognized, it was held:

"Where a highway is being improved, federal aid being granted for the purpose, and a contract is entered into by the county for the construction of a bridge thereon costing over $2,000 and therefore requiring to be constructed under the bridge law, the county commissioners are under a duty to carry out such contract which they cannot escape by undertaking to revoke it, provided the necessary steps were taken to give it validity." (Syl. ¶ 1.)

The state also directs attention to *State, ex rel., v. Charles*, 136 Kan. 875, 18 P. 2d 149. In that case at a special election held August 30, 1932, bonds for construction of a natural gas system were voted and at an undisclosed date a contract was made. On September 10; 1932, a petition calling for a referendum was filed, and on September 17, another petition was filed. The governing body ignored the petitions and mandamus was sought to compel an election. The writ was allowed. The case is an authority on the right to the writ under similar facts. There was no question in the case as to right of repudiation of the contract made, and obviously the right of another governmental body was not involved. It is worthy of note that the action was promptly filed.

The city and the county concede that mere failure to perform a contract does not of itself impair its obligation but on the contrary argue that the purpose of the proposed ordinance is not merely to direct a nonperformance but by the proposed legislative act to destroy the contract itself and they direct attention to the language used that the three resolutions be "repealed, set aside and held for naught," and that the repeal of a law which constitutes a contract is an impairment of its obligation (12 C. J., § 702, p. 1057; 12 Am. Jur. § 390, p. 19; and *Carondelet Canal Co. v. Louisiana*, 233 U. S. 362, 58 L. Ed. 1001, 34 S. Ct. 627). They further contend that re-

peal of the resolutions and the destruction of the contracts would destroy the rights of way and easements already acquired and paid for by the county, because such rights of way and easements cannot be used for any other purpose than that for which it was acquired, the flood control project, and that the attempted repeal would divest or impair vested rights, a thing that may not be done. See 12 C. J., § 486, p. 956, and §§ 488 and 489, p. 957, as well as *State, ex rel., v. State Highway Comm.,* 139 Kan. 391, Syl. ¶ 2, 32 P. 2d 493. The city and the county also contend that if the ordinance be held to be separable, so that section 1 repudiating "any and all contracts involving flood control" might be separately considered, that section may not be upheld, as contracts between individuals and corporations are impaired within the meaning of the Constitution whenever the right to enforce them by legal process is taken away. We shall not pursue this contention for two reasons. We do not think the ordinance separable in view of its title and in view of the fact the whole content is that refusal to proceed with the contracts is upon the assumption the resolutions are to be repealed. Further, the matter of repudiation of the contracts or refusal to proceed with any contracts involving flood control is not referred to in the title of the ordinance and must be treated as surplusage or void. See G. S. 1935, 13-1421 and 13-2901; West's Kansas Digest, Mun. Corp., § 112; and Hatcher's Kansas Digest, Mun. Corp., § 44.

It is hardly debatable that the intention of the signers of the referendum petitions and the purpose of the state is to cause the base on which the entire flood control project rests, that is the three resolutions, to be done away with by the process of repeal. What will be the result if a writ of mandamus issue and as a consequence there is repeal? When it is borne in mind that following the adoption of the resolutions, the city, county and the United States of America, agreeing among themselves, divided the entire flood control project into two segments, one within, the other without the city, and that neither segment could be performed unless the other was; that statutory assurances were given the United States of America by the city and the county to furnish lands, rights of way and easements without cost to the United States and to hold the United States free from all claims due to construction costs and to maintain the works after completion; that contracts were let and rights of way and easements acquired, and that each party acted upon the agreement of the other to participate, to now permit the·

city to destroy the contract by a so-called change in legislative policy, by repealing the resolutions that stood as the basis for its subsequent acts, would, in our opinion, impair the obligations of its contracts.

Limited to the matters just discussed it appears that there is not only a lack of a clear legal duty which the city officials should have performed, but on the contrary it appears that the end sought by the petitioners for a referendum and by the state is to compel performance of an act by such officials which they may not legally perform.

Were we in doubt as to the above conclusion we would still have for consideration whether in any event a writ of mandamus should issue. Without elaborating, it may be said that the writ is a discretionary one and does not issue as a matter or right, nor unless the defendant's legal duty is clear, and if it is not clear the writ should not issue, the burden of showing the right to relief being on the plaintiff. Even though we should hold that the attempted repeal of the resolutions was otherwise proper, before granting the writ we would have to consider the over-all effects and consequences; take note that if an election may be compelled to rescind the resolutions another similar referendum could rescind that action and reinstate the original plan; give consideration to what has been done by the city in carrying forward the project and the effect of its being stopped, give consideration to what has been done by the county, not as a matter of contract or impairment, but from the standpoint of over-all effect, give consideration as to whether a right to recover damages would constitute any adequate remedy to the county or anyone else adversely affected, and whether, over four years after inception of the project, in law and in equity, there should be interference in carrying out the plan adopted, where it appears, as it does here, that the controversy swings, not on whether there should be a flood control project, but what particular plan should be followed. Taking these matters into consideration, we are of the opinion the writ of mandamus should not issue.

We conclude that the plaintiff petitioner is not entitled to a writ of mandamus.