No. 45,911

STATE OF KANSAS, ex rel. KENT FRIZZELL, Attorney General, *Appellant*, v. LOUIS L. PAULSEN, DEAN BAUER, HOWARD C. FUNK, C. T. NEIS and WARD WITHERSPOON, as the Board of Commissioners of the City of Coffeyville, Kansas, and D. A. WILLBERN, SR., PHILLIP M. PREBLE, MARK FERRELL, BERNARD WADE and STEVE ADUDDELL, as the Board of Commissioners of the Urban Renewal Agency of Coffeyville, Kansas, *Appellees*.

(465 P. 2d 982)

Opinion filed March 7, 1970.

*Elwin F. Cabbage*, of Hutchinson, argued the cause, and *Robert K. Scovel*, of Independence, was with him on the brief for the appellant.

*Charles D. Knapp*, of Coffeyville, argued the cause and was on the brief for the appellee Urban Renewal Agency. *Joe L. Levy*, of Coffeyville, argued the

cause, and *Clement H. Hall*, of Coffeyville, was with him on the brief for the appellee city.

The opinion of the court was delivered by

HARMAN, C.: This is a mandamus action brought on relation of the attorney general of Kansas arising out of the refusal of the board of commissioners of the city of Coffeyville to adopt or, in the alternative, to submit to the electorate by way of referendum, an ordinance proposed by petition. The initiative ordinance would bar all activity within the city relating to that which is commonly known as urban renewal and development under state and federal law (K. S. A. 17-4742, *et seq.*, and Title 42, U. S. C., Chap. 8A, § 1441, *et seq.*)

Upon hearing the matter the trial court denied an order in mandamus and plaintiff has appealed.

The case was submitted to the trial court on the pleadings, certain exhibits and stipulations, which revealed the following:

On June 1, 1966, pursuant to K. S. A. 17-4746, the city commissioners of Coffeyville adopted Resolution No. 1024 finding blighted and slum areas existed within the city and that rehabilitation of such areas was in the interest of the public health, safety, morals and welfare of the residents of the city. On the same day the city, pursuant to K. S. A. 17-4756, adopted another resolution electing to have its urban renewal powers exercised by an urban renewal agency and in accord with 17-4757 it created such an agency composed of five commissioners.

During the period from August 31, 1966, to June 27, 1967, the city commission, by resolution, approved the undertaking of surveys and planning for an urban renewal project described as the Fountain Plaza project, authorized and approved the filing by the agency of several applications for advances of funds from the federal government to defray the cost of surveys and plans for urban renewal, approved a general neighborhood renewal plan, authorized the use of city funds for planning, secured authority to issue $30,000 in no-fund warrants of the city and paid the sum of $30,000 to the local urban renewal agency.

On June 5, 1967, the local agency entered into two separate contracts with private persons for the furnishing of technical services and studies in connection with the general neighborhood plan. On August 14, 1967, the agency received notice from the federal urban

renewal agency of a reservation of capital grant funds for the segment known as Fountain Plaza Project A in the amount of $5,710,-000, and allocating the requested funds for financing surveys and planning. On September 26, 1967, the local agency contracted with the federal government for the advance of funds to aid in financing the cost of surveys and planning in connection with the Fountain Plaza A project in the amount of $388,061. Thereafter, between October 25, 1967, and August 23, 1968, the local agency entered into eight separate contracts with private persons for the furnishing of various types of technical services and planning. On June 4, 1968, the local agency contracted with the federal government for the advance of funds for planning the Fountain Plaza General Neighborhood Renewal project in the amount of $84,611.

On September 5, 1968, the city commission published a notice of public hearing on Fountain Plaza A project in the Coffeyville Journal. On September 10, 1968, the city planning commission approved the project as being in conformity with its comprehensive development plan. Also in September the agency entered into two additional contracts for the furnishing of services and office facilities.

On September 18, 1968, the city commission held a public hearing on Fountain Plaza A project, pursuant to the published notice, at which various persons appeared and made known their views. A petition was presented requesting that the matter of urban renewal be voted upon at the November general election. The city commission ruled this petition was invalid but tabled a resolution approving the urban renewal and the location of the project.

On the morning of October 9, 1968, the petition which forms the basis of this action was filed in the city clerk's office. It provided:

"We, the undersigned, legally qualified voters and electors of the City of Coffeyville, Kansas, do respectfully request that the following Ordinance be passed by you as the governing body of the City of Coffeyville, Kansas, without alteration, or submitted without alteration by such governing body to a vote of the electors of said City as and within the time provided by law, for adoption or rejection, said Ordinance being as follows, to-wit:

"ORDINANCE NO. _____

"AN ORDINANCE RELATING TO THE EXERCISE OF URBAN RENEWAL PROJECT POWERS BY THE GOVERNING BODY OF THE CITY OF COFFEYVILLE, KANSAS:

"BE IT ORDAINED BY THE GOVERNING BODY OF THE CITY OF COFFEYVILLE, KANSAS:

"Section 1. That no powers heretofore or hereafter conferred upon the City of Coffeyville, Kansas, under the provisions of Chapter 17, of the Kansas

Statutes Annotated shall be exercised for the implementation of Public Law 89-117 (so-called Housing and Urban Development Act of 1965) or subsequent Federal legislation of like effect.

"Section 2. That resolution No. 1024 adopted by the governing body of the City of Coffeyville, Kansas, on the 1st day of June, 1966, pertaining to slum or blighted areas in the City and the necessity of rehabilitation, conservation or redevelopment, or a combination thereof, of such area or areas, in the interest of public health, safety, morals and welfare of the residents of Coffeyville, Kansas, is hereby repealed."

The petition contained 1,527 signatures.

Later during its regular meeting on the same day the city commission by resolution approved the urban renewal plan and the location previously submitted, and the commission and the local urban renewal agency entered into a cooperation agreement respecting the Fountain Plaza A project.

On October 23, 1968, the city commission received advice of the city clerk that the petition presented on October 9, 1968, contained the requisite number of valid signatures pursuant to K. S. A. 12-3013 but the commission formally denied the petition.

On December 31, 1968, plaintiff filed this action in mandamus to compel submission of the proposed ordinance to the electorate.

In their answers the defendant boards asserted several defenses including the doctrine of laches, unconstitutional impairment of existing contracts, that the proposed ordinance was administrative rather than legislative in nature and therefore not subject to referendum, and the title of the proposed ordinance was defective.

In its ruling September 9, 1969, denying an order in mandamus the trial court made certain findings of facts and conclusions of law. It found, preliminarily, that the municipality had proceeded in compliance with K. S. A. 17-4743 to the date of the filing of the action and also that the proceedings by the plaintiff were in conformity with K. S. A. 12-3013, our initiative and referendum statute with respect to city ordinances. The court further found as a fact that the municipality was contractually bound at the time plaintiff's petition was filed. It concluded the adoption of the proposed ordinance would unconstitutionally impair existing contracts.

The trial court also considered the question of laches, stating:

"The fact is that the plaintiff's petition was filed over two years after the initiating ordinances were passed by the City Commission. If, as the plaintiff contends in the case of the proposed ordinance, these initiating ordinances were legislative in nature, the right to referendum under K. S. A. 12-3013 would have come into being with their passage. Certainly, a delay of over two years

in the face of widely publicized action by the City and the Urban Renewal Board, permitting the complex contractual and planning arrangements by and between these bodies, the Federal Government and private parties to be entered into and acted upon could hardly be characterized as anything but unconscionable delay."

The trial court concluded the doctrine of laches was applicable as a defense. It considered but declined to rule upon the question whether the proposed ordinance is legislative or administrative.

Plaintiff-appellant makes several contentions. He asserts the trial court erred in finding the municipality was contractually bound, arguing appellees had only contracts relating to surveys and planning and that the real binding contract on the project did not come into existence until after the petition was filed. He contends the initiative ordinance would not unconstitutionally impair existing contracts because the contracts were subject to interruption of the city failed to approve the project, and there was nothing prior to the October 9, 1968, action by the city which amounted to any commitment on appellees' part.

The trial court had before it all the contracts entered into by appellees prior to October 9, 1968. Except for certain ones with the federal government, they are before us only in highly summarized fashion, that is, they are described only by date, total amount, parties and general nature of the subject matter. The trial court found from the evidence before it that the municipality was contractually bound at the time appellant's petition was filed. We cannot say there was no commitment on appellees' part prior to October 8, 1968, even though the record before us does not demonstrate with particularity the nature and extent of appellees' obligations and the legal consequences.

It should first be stated that Article I, Section 10, of the federal constitution forbidding a state to pass any law impairing the obligation of contracts is applicable to political subdivisions of the state. In *Northern Pacific Railway v. Duluth*, 208 U. S. 583, 52 L. ed. 630, 28 S. Ct. 341, we find this:

"It is no longer open to question that municipal legislation passed under supposed legislative authority from the State is within the prohibition of the Federal Constitution and void if it impairs the obligation of contracts." (p. 590.)

And the magnitude or degree of the impairment is of no consequence (*Ohio State Life Insurance Co. v. Clark*, 274 F. 2d 771).

Appellant also contends the contracts are of a kind where a city

may be permitted to renege upon them and instead respond in damages for the breach.

Virtually the same arguments presented here by appellant were advanced in an analogous situation in *State, ex. rel., v. Salome,* 169 Kan. 585, 220 P. 2d 192, and answered adversely. There, in response to federal legislation, the city of Wichita and Sedgwick county had instituted action in 1945, in the form of resolutions, to carry out a program for flood protection of the area. Later the city and county had entered into contracts with each other and with the federal government toward accomplishment of the project, had expended money for and taken necessary proceedings to acquire rights in lands, and had incurred other expense. In 1949 dissident electors submitted petitions calling for repeal of the basic resolutions on which the project was being performed, and brought mandamus when they were not honored. Among other things the city and county in defense pleaded laches and impairment of contracts. This court refused to compel the requested referendum. In arriving at this decision consideration was given to the issue of repudiation of contracts affecting rights of third parties and the fact the action dealt with a comprehensive plan of public improvement in which the right of another municipality was involved, where each had carried out its part of the whole project over a period of more than four years and each had expended large sums of money, a great part of which would be wasted or lost if one of the parties to the arrangement could or would be permitted to withdraw. This court emphasized: ". . . the writ [of mandamus] is a discretionary one and does not issue as a matter of right, nor unless the defendant's legal duty is clear, and if it is not clear the writ should not issue, the burden of showing the right to relief being on the plaintiff." (p. 595.)

Appellant asserts the doctrine of laches is inapplicable here because it could not be known just what was going to happen until the public hearing September 18, 1968, and therefore the referendum request was timely filed. This contention does not take into account the fact the thrust of appellant's objection is not toward any particular urban renewal project but is against urban renewal generally. The situation here is not that which was shown in *Offen v. City of Topeka,* 186 Kan. 389, 350 P. 2d 33, or *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964, cases demonstrating the individual citizen's remedy against arbitrary, capricious and unlawful

action of officials carrying out specific urban renewal programs. Moreover, as already indicated, the trial court in effect found as a fact that appellees' actions in advancing urban renewal were "widely publicized", which finding apparently stemmed from the fact the court had before it exhibits reflecting the local publicity given the various steps over a period of more than two years and four months. It found thirty-three specific steps that were taken by appellees and the appropriate federal agencies which were made public during the period. This court has long recognized the doctrine of laches as a defense to mandamus (see 4 Hatcher's Kansas Digest, rev. ed., Mandamus, § 108; 6A West's Kansas Digest, Mandamus, § 143 [2]).

Here the petition for the proposed ordinance was filed more than twenty-eight months after the urban renewal program was officially launched, and after appellees along with the federal government had expended much time and money in widely publicized actions which were essentials in the shaping of an urban renewal project. Contracts with private entities had been made as well as those which were purely intergovernmental. We are told more than $180,000 has been expended. In addition, the city remains contractually obligated. Under these circumstances we cannot disturb the trial court's ruling the proposed ordinance would unconstitutionally impair existing contracts, and further, that the doctrine of laches bars the requested relief.

The determination of other matters raised by the parties would not affect the outcome of this appeal.

The judgment is affirmed.

APPROVED . BY . THE . COURT.