(719 P.2d 14)

No. 57,782

JOSEPH POTUCEK, III, JANA P. (POTUCEK) LYNN, PATRICIA ANN POTU-
CEK and KEVIN L. POTUCEK, *Plaintiffs-Appellees*, v. STEVEN LEE
POTUCEK, *Defendant-Appellant.*

Opinion filed
May 15, 1986.

*Richard Ebersole*, of Mulvane, and *Steven C. Day*, of Woodard, Blaylock,
Hernandez, Pilgreen & Roth, of Wichita, for appellees.

*Laurence R. Hollis*, of Wichita, for appellant.

Before MEYER, P.J., CHARLES J. SELL, District Judge, assigned, and BARRY A. BENNINGTON, District Judge, assigned.

SELL, J.: This action is brought by four of five children against their brother to require him to execute a deed that would make all five children equal owners of certain real property located in Sumner County, Kansas. The property in dispute is hereinafter referred to as the "River" farm.

This farm was deeded to the two oldest of the five children as joint tenants with right of survivorship on July 1, 1971, by their father, Joseph Potucek, Jr. At the time the deed was given, the three younger children were minors and were still in school. The controversy among the children results from various transactions and agreements within the family concerning the River farm and another family farm known as the "Valverde" farm and the manner in which the income from both farms would be used. The problems which have arisen had their origin in the divorce of the parents of the five children in 1961 and the ensuing financial problems of Joseph Potucek, Jr., due to his chronic alcoholism until his death in 1975.

The trial court made extensive findings of fact. To better understand the issues raised, we set out the findings of the district court:

"1. That the Plaintiffs and Defendant are the children of Joseph Potucek, Jr. who died in July of 1975.

"2. That prior to his death, Joseph Potucek, Jr. had on the 1st day of July, 1971, deeded the Southwest Quarter (¼) of Section Fourteen (14), Township Thirty (30) South, Range One (1) West, of the 6th P.M. in Sumner County, Kansas, referred to by the parties as the River Farm, to Joseph Potucek, III, and Steven L. Potucek, as joint tenants with the right of survivorship.

"3. That prior to, and at the time of that conveyance, Joseph Potucek, III, and Steven L. Potucek had been relied upon and were relied upon by Joseph Potucek, Jr. to assist him in conducting his affairs and advising him and acting on his behalf.

"4. That prior to the Deed being given, Joseph Potucek, Jr. had discussed with Joseph Potucek, III, deeding the River Farm to the boys to be held for the benefit of all of the children and to protect it from his creditors.

"5. That prior to, and at the time of the Deed, Joseph Potucek, Jr. suffered from alcoholism and his financial affairs were in bad shape. Among other problems and debts, he owed past due child support, back income taxes, back real property taxes, and he had been sued by Dorothy Potucek for failure to make the payments called for to purchase the River Farm.

"6. That after the Deed to the River Farm was delivered, Steven called Joseph Potucek, III, and told him that the Deed had been made and the property was in their names. He further stated that they were to work out their father's financial problems and hold and protect the property for the benefit of all of the children.

"7. That Steven told Joseph Potucek, III, that the property was deeded to all of the children when they were all 21.

"8. That Joseph Potucek, III, sent Steven over Two Thousand Six Hundred Dollars ($2,600.00) to be used to clear up some of their father's financial problems.

"9. That on December 3, 1971, Dorothy Potucek, mother of the parties, quit claimed to Joseph Potucek, Jr. her interest in the River Farm. The money supplied by Joseph Potucek, III, was used, in part, to satisfy her claims to that property.

"10. That in June of 1972, Steven L. Potucek and Joseph Potucek, III, obtained a loan of Fifteen Thousand Dollars ($15,000.00) from the Federal Land Bank and mortgaged the River Farm to secure it. Funds were used to repay each of them the money they had advanced to meet their father's financial problems, and to take care of other financial needs of their father. This loan was later paid in full.

"11. That on November 1, 1972, Joseph Potucek, Jr. executed the Deed on the Northwest Quarter (¼) of Section Nineteen (19), Township Thirty-five (35) South, Range Two (2) East, of the 6th P.M. to all five (5) children as joint tenants with the right of survivorship, subject to a life estate reserved to him. The Deed recited that it was given pursuant to the Judgment and Decree of the District Court of Sedgwick County, Kansas, entered May 26, 1961. The property is referred to, by the parties, as the Valverde Farm.

"12. That on the 19th day of November, 1973, Joseph Potucek, Jr. executed a Quit Claim Deed to all five (5) children, conveying to them all of his remaining interest in the Valverde Farm.

"13. That in December of 1973, Steven L. and Joseph Potucek, III, obtained a loan for Nine Thousand Dollars ($9,000.00) and mortgaged the River Farm. The money was used to meet their father's financial obligations.

"14. That from the time the River Farm was deeded to Steven and Joseph Potucek, III, until their father's death, Steven received all of the income from the River Farm and the Valverde Farm. That income was used by him to pay the taxes on both properties, to pay mortgage payments on the River Farm, to pay the other debts of their father and to maintain him. He continued to use all the income, from both farms, after the Valverde Farm had been deeded to the five (5) children in fee.

"15. That Joseph Potucek, Jr. continued to occupy the River Farm as his home until his death.

"16. That at all times, the Valverde Farm has been an income producing property and the River Farm has been a non-producing property. The River Farm income never paid more than its taxes. All of the mortgage payments on the River Farm were paid from the income from the Valverde Farm, until Steven commenced payment of the mortgage payments in 1983, after the filing of this lawsuit.

"17. That the parties all met after their father's funeral and discussed the farms. At that time, Joseph Potucek, III, and Steven L. Potucek acknowledged that although they were named as joint tenants on the River Farm, the children were all owners of equal shares in both the River Farm and the Valverde Farm. It was also discussed that the three (3) younger children's names would be added to the Deed after Kevin, the youngest, was 21.

"18. That at that meeting, they discussed the needed improvements to the

property, the use of the income from the Valverde Farm to pay off the mortgage on the River Farm and to improve and maintain the River Farm.

"19. That they also discussed the mutual use of the River Farm by all five (5) of them. They ultimately agreed that any of them wanting to use the farm would contact and get the permission of at least two (2) of the other children before using the farm.

"20. That following that meeting, part or all of the parties met on various other occasions and usually discussed the ramifications of their joint ownership of the property.

"21. That they continued to use the agreed protocol for the use of the property and when Steven wanted to have a party, he contacted Patricia and Kevin to get their permission to use the River Farm.

"22. That following their father's funeral and their family meeting, Patricia, Kevin and Joseph Potucek, III, all worked on the River Farm, cleaning it up, maintaining it and improving it by their physical labor.

"23. That Steven continued to receive all of the income from both of the farms, kept the books and managed the farms. The income was used to pay the taxes on both farms, to make the mortgage payments on the River Farm and to improve and maintain the River Farm. It was also used to purchase such items as a stove and microwave for that house located on the River Farm for the use of all the children. Steven's book of accounts has disappeared, and he has been unable to make a complete accounting.

"24. That in 1980 Steven L. Potucek was divorced from his wife, Diana, and began residing on the River Farm.

"25. That the youngest of the five (5) children, Kevin, became 21 in 1980, and in December of 1980, Steven advised the three (3) younger children that they had no interest in the River Farm and he did not intend to put their names on the Deed.

"26. That the Plaintiffs, through their physical labor, and by the use of their income from their interest in the Valverde Farm, have contributed to the maintenance and improvement of the River Farm. Their income from the Valverde Farm has been used to pay the taxes and mortgage payments on the River Farm.

"27. That Joseph Potucek, III, still recognizes that the three (3) younger children, Jana P. (Potucek) Lynn, Patricia Ann Potucek, and Kevin L. Potucek, are equal owners of the River Farm with Steven and Joseph Potucek, III. He is ready and willing to execute a Deed adding them as co-owners.

"28. Steven L. Potucek admits that at the time the Deed to the River Farm was given to him and his brother, Joseph Potucek, III, the property was to be protected and preserved by them. He admits that they were to use all of the income from both farms to take care of their father and his financial affairs. He admits that their father had the right to occupy the River Farm as his home until his death. He admits that they had an affirmative obligation to use the income from the Valverde Farm to maintain and improve the River Farm after their father's death.

"29. That Twenty-one Thousand Dollars ($21,000.00) in net income from the Valverde Farm has been invested in maintenance, improvement and payment of mortgages and taxes on the River Farm.

"30. That the house on the River Farm has been maintained and improved during the time in question. Rural water has been brought to the farm. The Great Plains Conservation Program has been completed. Access to the portion of the farm north of the river has been obtained through a lawsuit. All of the liens for tax and all of the claims of Dorothy Potucek have been satisfied.

"31. That prior to the divorce of their parents, the River Farm was the family home."

While many of the facts found by the district court are disputed and there is conflicting evidence, the trial court's findings of controlling facts will not be disturbed on appeal if supported by substantial, competent evidence. *Bell v. Tilton*, 234 Kan. 461, 468, 674 P.2d 468 (1983).

The defendant, Steven Lee Potucek, appeals the trial court's decision that he is equitably estopped from denying common ownership in the River farm with the plaintiffs, Joseph Potucek, III, Jana P. (Potucek) Lynn, Patricia Ann Potucek and Kevin L. Potucek, as well as its order that Steven forthwith join with Joseph Potucek, III, in executing a deed naming themselves and Jana, Patricia and Kevin as joint tenants with right of survivorship to said property.

The defendant contends that since the trust statute, K.S.A. 58-2401, prohibits the creation of an express oral trust concerning land and since the trial court did not rule on plaintiffs' claim of a constructive trust, the trial court's decision was erroneous. Further, the defendant contends that the promise or agreement with Joseph was not in writing and thus barred by the Statute of Frauds. Both contentions are without merit.

K.S.A. 58-2401 provides:

"No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his or her attorney thereto lawfully authorized in writing."

The defendant correctly notes that in *Silvers v. Howard*, 106 Kan. 762, 771, 190 Pac. 1 (1920), the court held that when there is a written conveyance and accompanying oral agreement to later recover the property, no trust to hold the property is created by failure to comply with K.S.A. 58-2401, set out above. The court also noted that a trust by implication may arise as a result of the oral agreement and other evidence establishing actual or constructive fraud. As defendant also correctly notes, the trial court did not rule on plaintiffs' claim of a constructive trust as permitted in *Silvers*. The district court did, however, rule that the

defendant was equitably estopped to deny existence of the trust or agreement. In that situation, K.S.A. 58-2401 or the Statute of Frauds is not applicable:

"Since . . . the statute of frauds does not prevent a trustee from carrying out a parol trust, but merely makes it voidable at his option, when the trustee has by his conduct ratified and affirmed the trust and induced others to change their position because of it, the doctrine of equitable estoppel comes into play and the trustee cannot deny the validity of the trust on the ground that it violates the statute of frauds." 89 C.J.S., Trusts § 83.

See also *Texas Co. v. Sloan*, 171 Kan. 182, Syl. ¶ 2, 231 P.2d 255 (1951), where it is stated, "The statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and a court of equity will not ordinarily permit its use as a shield to protect fraud or to enable one to take advantage of his own wrong."

The defendant argues that the pretrial order does not suggest that plaintiffs' cause of action was for the recovery of real property; therefore, the trial court erred in ruling that the applicable statute of limitations was fifteen years as set out in K.S.A. 60-507. This argument is not persuasive.

The defendant correctly notes that K.S.A. 60-216 provides that once a pretrial order is entered, it "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Here, the pretrial order originally specified that one of the special questions of law to be decided was the applicable statute of limitations. The order was never modified. Apparently, plaintiffs did not identify which statute of limitations they believe applied until they filed their trial brief on the day of trial; however, the defendant did not state his theory on the applicable statute of limitations until he filed his trial brief a week later. No prejudicial error has been shown.

The defendant argues that plaintiffs' claim for relief was not to recover real property; therefore, the fifteen-year statute of limitations set out in K.S.A. 60-507 was not applicable. Rather, the defendant argues that plaintiffs' claim was for a constructive trust based on defendant's fraudulent conduct; therefore, the two-year statute of limitations, K.S.A. 60-513(a)(3), barred plaintiffs' claim.

Defendant's contention would be meritorious if plaintiffs sought only the imposition of a constructive trust. See generally *Herthel v. Barth*, 148 Kan. 308, Syl. ¶ 1, 81 P.2d 19 (1938). (If the essence of a claim is to seek the imposition of a constructive trust

because of the trustee's fraudulent conduct, the two-year rather than fifteen-year statute of limitations applies.) However, plaintiffs also sought recovery under the alternate theory that defendant was equitably estopped to deny their interest in the property. Generally, actual fraud, bad faith or an attempt to mislead or deceive is not essential to a claim of equitable estoppel. *Levi Strauss & Co. v. Sheaffer*, 8 Kan. App. 2d 117, Syl. ¶ 2, 650 P.2d 738 (1982). A party claiming equitable estoppel must merely prove "that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed [and that] it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." 8 Kan. App. 2d 117, Syl. ¶ 1.

By their claim of equitable estoppel, plaintiffs were arguing that defendant was in no position to contend that their names should not be added to the July 1, 1971, deed. The test for determining whether a claim is an action to recover real property "is whether the complaint seeks a right to, title in, or possession of, realty." *City of Attica v. Mull Drilling Co.*, 9 Kan. App. 2d 325, Syl. ¶ 2, 676 P.2d 769 (1984). See also *Main v. Payne*, 17 Kan. 608 (1877). "It is the right to be enforced, not the procedure used to enforce it, that determines what statute of limitations applies." *City of Attica v. Mull Drilling Co.*, 9 Kan. App. 2d 325, Syl. ¶ 3. Considering the relief plaintiffs sought, the trial court did not err in determining that K.S.A. 60-507 was the applicable statute of limitations.

" 'The doctrine of laches is an equitable device designed to bar stale claims, and courts of equity will regard long passage of time in asserting claims with disfavor apart from any particular statute of limitations.' [Citation omitted.]" *Harvester, Inc. v. Goodyear Tire & Rubber Co.*, 4 Kan. App. 2d 363, 365, 606 P.2d 498 (1980). Generally, delay by itself will not constitute laches. In determining the applicability of the doctrine, the court must consider the circumstances surrounding the filing of suit as well as any prejudice to the rights of the defending party. 4 Kan. App. 2d at 365.

Here, the trial court did not err in ruling that the doctrine of laches was inapplicable. The instant suit was filed three years after the youngest Potucek turned twenty-one and defendant

repudiated his prior position of including all of Joseph's children on the deed at that time. In addition, plaintiffs understandably delayed filing suit against their brother in hopes of resolving the matter amicably. Finally, the defendant has not specifically identified how he was prejudiced by plaintiffs' delay in bringing the suit.

The defendant contends that the trial court ignored the evidence and the pretrial order in connection with the issues involved and further may have been prejudiced by notes it might have taken, as disclosed by its findings of fact in certain areas.

The question of the sufficiency of the evidence to support the court's findings in a bench trial was recently discussed by the supreme court in *Bell v. Tilton*, 234 Kan. at 468, where the court states:

"Where a trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law."

The defendant specifically contends that the following findings of fact were not supported by the evidence and therefore could have erroneously affected the court's ultimate decision:

1. The defendant acknowledged that all five children were equal owners of the property (finding number 17).

2. The River Farm property was not income-producing property (finding number 16).

Here, there was sufficient evidence to support each disputed finding of fact. First, Joseph Potucek, III, testified that Steven told him the property was to be held for all five children and that Steven agreed that all five children would be named on the deed when Kevin turned twenty-one. Second, the relevant portion of the other disputed finding states:

"16. That at all times, the Valverde Farm has been an income producing property and the River Farm has been a non-producing property. The River Farm income never paid more than its taxes."

This finding was consistent with Joseph Potucek, III's, testimony that the River Property produced some income; however, the Valverde Property produced substantially more income.

It appears from the facts of the case that Joseph Potucek, Jr., intended that title to both farms should go to all five children as joint tenants with right of survivorship. With passage of time and

change of circumstances, it may well be that some other form of joint ownership would now be more appropriate. That is a matter to be considered and resolved by the parties apart from this proceeding.

In conclusion, the trial court's findings of fact and conclusions of law are soundly based. Judge Graber's opinion is well reasoned and well written. It should be and is affirmed.