(770 P.2d 486)

No. 62,450

LESLIE W. BLEVINS, SR., *Appellant,* v. NANCY HIEBERT, WARREN RHODES, and DAVID HOPPER, individually and in their capacity as the BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS; and DENNIS CONSTANCE, MICHAEL RUNDLE, MICHAEL AMYX, SANDY PRAEGER, and ROBERT SCHUMM, individually and collectively as members of the CITY OF LAWRENCE BOARD OF CITY COMMISSIONERS, *Appellees.*

Opinion filed March 3, 1989.

*Donald G. Strole,* of Lawrence, for appellant.

*John W. Lungstrum* and *Scott J. Bloch,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, for appellees Board of County Commissioners of Douglas County.

*Roger K. Brown,* of Allen, Cooley & Allen, of Lawrence, for appellees Board of City Commissioners of City of Lawrence.

*James M. Kaup,* general counsel, for *amicus curiae* League of Kansas Municipalities.

Before GERNON, P.J., ELLIOTT, J., and JAMES J. NOONE, District Judge Retired, assigned.

GERNON, J.: Leslie W. Blevins appeals rulings of the district court which granted Douglas County's motion for summary judgment and the City of Lawrence's motion to dismiss, and denied his post-trial motions. We are persuaded the trial court was correct in its ruling on each point and affirm.

In the spring and summer of 1985, in answer to a then perceived need, Douglas County and the City of Lawrence agreed to share in the cost of a bypass project, known as the South Lawrence Trafficway.

In early June of 1985, it was widely publicized that the county was considering a bond issue for construction of its share of the bypass cost. Also in June of 1985, news articles reported that the county was considering a method to restructure its indebtedness and was discussing funding of the bypass with the city.

In July of 1985, an attorney general opinion requested by the county indicated the county could proceed with the bypass project through use of its home rule powers by ordinary resolution, without approval of the electors of the county. At the same time, the county published a timetable for the bypass bond issue which clearly indicated that the bond closing was scheduled for August 30, 1985.

On August 14, 1985, the county adopted Resolution No. 85-8-2, using its home rule powers, which authorized the bypass project. The resolution also authorized the issuance of bonds to pay for the bypass. Another resolution authorized a bond issue of $12,595,000, of which $4,000,000 was earmarked for the bypass project. The balance of the project cost was to come from federal and state funds and through a joint agreement with the City of Lawrence.

The bond issue closed as scheduled. The county is authorized to use the funds received from the sale of the bonds only to finance the projects for which the bonds were issued and cannot redeem the bonds until September 1, 1997.

Blevins, a resident of Douglas County, who owns property and pays taxes in the City of Lawrence, filed his action in the district court of Douglas County on August 28, 1987, more than two years after the county adopted Resolution No. 85-8-2, and two years after the bonds were issued. The county had expended over $200,000 from the bond proceeds for the bypass project before the filing of the lawsuit by Blevins.

Blevins contends on appeal that the district court erred (1) in ruling that the issuance of the bonds by the county was proper; (2) in granting the city's motion to dismiss; (3) in ruling that Blevin's suit was barred by laches; and (4) in denying Blevin's post-trial motion.

## PROPRIETY OF ISSUING BONDS BY THE COUNTY UNDER HOME RULE

The focus of Blevin's appeal is that K.S.A. 68-580 *et seq.*, the act dealing with arterial highways, specifically provides for what the county has done by resolution, but that the statutory authority under K.S.A. 68-584 requires that the question of the issuance of bonds be submitted to a vote of the county electors. Blevins contends that this is specific statutory authority and that K.S.A. 68-584 is the *exclusive* method by which a county can issue general obligation bonds for the purposes of funding a secondary arterial highway. Blevins also argues that the resolution passed by the county conflicts with K.S.A. 68-580 *et seq.*, and therefore the bonds should have been issued through a charter resolution instead of through an ordinary home rule resolution.

The county contends that no specific statutory authority exists for the proposed highway, and that it therefore could plan to construct the highway and issue the bonds under ordinary home rule powers. The county asserts that the statutory sections relied upon by Blevins are not exclusive or mandatory and that the resolutions adopted by the county were proper in that they did not conflict with any act of the legislature.

K.S.A. 19-101a grants home rule power to counties. Sections (a) and (b) under that same statute provide that if no statutory authority exists for local legislation other than home rule, and the proposed local legislation is not contrary to an act of the legislature, the local legislation is effective upon the adoption and publication of an ordinary resolution. If the proposed local legislation is contrary to an act of the legislature, the local legislation must be passed as a charter resolution under K.S.A. 19-101b. Under K.S.A. 19-101b(c), a charter resolution may be submitted to a vote of the electors if a sufficient number of electors file a petition so requesting. K.S.A. 19-101c states that the home rule power granted shall be liberally construed to give counties the largest possible measure of self-government.

K.S.A. 68-580 *et seq.* permits the county by resolution to designate all or any portion of an existing or proposed county road or highway as a "secondary arterial highway." This act does not indicate, however, that it is the only method available to the county to authorize construction of a highway. The legislature could have done so, but a plain reading of K.S.A. 68-580 *et seq.* reveals no language indicating a legislative intent to make the provisions exclusive. K.S.A. 68-582 states that "the board of any county and the governing body of any city *may* by resolution propose the designation as a secondary arterial highway any existing street . . . or a proposed new street . . . ." (Emphasis added.)

The fact that there is state legislation other than home rule legislation which the county might have used does not mean the county cannot legislate on the same subject as long as it does not conflict with state law. *City of Garden City v. Miller,* 181 Kan. 360, 366, 311 P.2d 306 (1957).

The exercise of home rule powers by a county must be directed to local legislation and administration, but few resolutions deal with exclusively local matters. Local acts with extraterritorial impact should stand if not in conflict with a state statute and not in an area clearly pre-empted by the state. *Missouri Pacific Railroad v. Board of Greeley County Comm'rs,* 231 Kan. 225, 230-31, 643 P.2d 188 (1982).

Blevins relies heavily upon the case of *Seltmann v. Board of County Commissioners,* 212 Kan. 805, 512 P.2d 334 (1973). We are persuaded that the *Seltmann* case can be distinguished from the present set of circumstances in that: (1) the language concerning designation of arterial highways under K.S.A. 68-580 *et seq.* is permissive, not mandatory; and (2) K.S.A. 19-101c states that county home rule powers shall be liberally construed for the purpose of giving to counties the largest measure of self-government.

We therefore conclude that the county properly utilized its home rule power by adopting the resolutions authorizing the agreements and the issuing of the bonds, that said local legislation was not in conflict with the state law, and that the county was not required to proceed under the provisions of K.S.A. 68-580 *et seq.*

Additionally, we think it is not a mere exercise in semantics to

observe that the roadway proposed by the county's resolution looks more like a circumferential than an arterial highway. The significance of the observation is obvious. If the proposed roadway is not an "arterial highway" as contemplated by K.S.A. 68-584, there can be no conflict between that statute and the county's exercise of its home rule powers. Manifestly, the county's action was statutorily authorized.

## DISMISSAL OF THE CITY OF LAWRENCE

Blevins did not address the issue of the dismissal of the City of Lawrence in his appellate brief, although the matter was noted in his notice of appeal.

An issue that is not briefed on appeal is waived or abandoned. *Feldt v. Union Ins. Co.,* 240 Kan. 108, 112, 726 P.2d 1341 (1986).

We therefore conclude that Blevins has abandoned this issue on appeal and affirm the trial court's granting of the motion to dismiss the City of Lawrence.

## LACHES

The district court found that Blevins' claim was barred by laches. It found that the county would suffer great disadvantage and loss if Blevins' petition was to be granted and that the loss could have been avoided if Blevins had acted promptly. The court specifically found that Blevins had sufficient notice to act in June of 1985, and that any challenge in the courts should have been filed before the bonds were issued. The court found that approximately $214,000 of the bond proceeds had been expended, and that this expenditure might have been avoided if Blevins had been diligent in filing his claim.

The doctrine of laches applies when a party neglects for an unreasonable and unexplained length of time to assert a claim or right, and the lapse of time and other circumstances cause prejudice to the adverse party. *Capitol Federal Savings & Loan Ass'n v. Glenwood Manor, Inc.,* 235 Kan. 935, 938, 686 P.2d 853 (1984).

Although the lapse of time is not sufficient by itself to determine whether there has been laches on the part of any party in a particular case, courts have discretion over all the facts and circumstances to determine the question. *Ten Eyck v. Harp,* 197 Kan. 529, 534, 419 P.2d 922 (1966).

In determining the applicability of the doctrine, the court must consider the circumstances surrounding the filing of the suit as

well as any prejudice to the rights of the defending party. *Potucek v. Potucek*, 11 Kan. App. 2d 254, 260, 719 P.2d 14 (1986).

Reviewing the record as a whole, we cannot say that the trial court abused its discretion in making a finding of laches.

## POST-TRIAL MOTION

Blevins' post-trial motion attacked the laches determination by asserting the county had caused his delay in bringing the suit because of certain conflict of interest issues.

The court treated the post-trial motion as one to alter or amend a judgment under K.S.A. 60-259(f), although it appears to be a K.S.A. 60-260 motion. The trial court concluded that the matters in the post-trial motion are ones which could have been presented prior to the summary judgment ruling had Blevins exercised reasonable diligence and further found that the substance of the motion was without merit on its face.

We conclude that the trial court, under the facts and circumstances of this case, did not abuse its discretion in denying Blevins' post-trial motion attacking the ruling on laches.

The rulings of the trial court are affirmed.