No. 62,450

LESLIE W. BLEVINS, SR., *Appellant*, v. NANCY HIEBERT, WARREN RHODES, and DAVID HOPPER, individually and in their capacity as the BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, KANSAS; and DENNIS CONSTANCE, MICHAEL RUNDLE, MICHAEL AMYX, SANDY PRAEGER, and ROBERT SCHUMM, individually and collectively as members of the CITY OF LAWRENCE BOARD OF CITY COMMISSIONERS, *Appellees.*

(783 P.2d 1260)

Opinion filed December 8, 1989.

*Donald G. Strole,* of Lawrence, argued the cause and was on the briefs for appellant.

*John W. Lungstrum,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, argued the cause and *Scott J. Bloch,* of the same firm, was with him on the brief for appellee Board of County Commissioners of Douglas County.

*Roger K. Brown,* of Allen, Cooley & Allen, of Lawrence, argued the cause and was on the brief for appellee Board of City Commissioners of City of Lawrence.

*James M. Kaup,* general counsel, and *David L. Corliss,* attorney, were on the briefs for *amicus curiae* League of Kansas Municipalities.

The opinion of the court was delivered by

HERD, J.: This is a civil action for an injunction. This appeal seeks review of a district court order granting summary judgment to the Board of County Commissioners of Douglas County and denying the injunction.

The facts in this case are not in serious dispute and have been fully set forth in *Blevins v. Hiebert,* 13 Kan. App. 2d 318, 770 P.2d 486 (1989). Due to the complexity of the case, however, the facts are here presented again in some detail.

On June 8, 1985, the Lawrence Journal World newspaper reported that the Douglas County Commissioners were considering a bond issue to help construct a by-pass highway south of Lawrence. County consultants publicly stated only $1,010,000 of the $4,000,000 needed in general obligation bonds for the by-pass could be issued without a mandatory vote of Douglas County voters. Subsequently, the Kansas Attorney General issued an opinion at the request of the County, which stated that the County plan to issue general obligation bonds for construction of the by-pass without a public vote was permissible under its home rule authority.

Thereafter, the Douglas County Board of County Commissioners adopted several resolutions on August 14, 1985, through use of its home rule powers, by ordinary resolution. Resolutions No.

HR 85-8-2 and No. 85-41 authorized construction of the highway system and the issuance of general obligation bonds to finance the highway. Resolution No. 85-43 authorized the issuance of $12,595,000 in general obligation bonds to refund the County's bonded debt and to pay for certain public improvements within the County, including $4,000,000 for construction of the by-pass highway. The bonds were issued and the transaction closed on August 29, 1985. Douglas County and the City of Lawrence adopted a joint resolution on September 1, 1987, concerning the construction of the South Lawrence Trafficway.

Leslie W. Blevins, Sr., a resident of Douglas County and property owner in the City of Lawrence, filed a lawsuit against Douglas County, the City of Lawrence, and individual members of their commissions on August 28, 1987. He asked for temporary restraining orders and for permanent injunctions preventing the City and County from proceeding with the South Lawrence Trafficway without submitting the proposal to the voters. Specifically, he asked that the County be restrained from spending the money from the bonds it had issued for the by-pass construction and that the City be restrained from taking steps to issue general obligation bonds for its share of the by-pass costs without submitting the issuance of the bonds for voter approval.

Douglas County filed a motion for summary judgment, and the City of Lawrence filed a motion to dismiss. The district court granted the City's motion to dismiss on February 4, 1988. The court found that Blevins had standing to sue and ruled that Douglas County issued the general obligation bonds properly under its home rule authority. Furthermore, the district court determined that Blevins' claim was barred by the doctrine of laches.

On February 16, 1988, Blevins filed a motion for new trial, to alter or amend the judgment, and for reconsideration. This motion alleged that conflict of interest grounds existed which should have prevented the County from asserting the equitable defense of laches, and Blevins requested that the laches decision be amended. The district court denied Blevins' motion on April 28, 1988. Blevins appealed the district court's judgment and denial of his post-trial motion.

The Court of Appeals held the County legally issued the general obligation bonds under its ordinary home rule powers pursuant

to K.S.A. 19-101a. *Blevins v. Hiebert,* 13 Kan. App. 2d at 321. The court found that K.S.A. 68-580 *et seq.* is a permissive statute and not the only method available for the County to authorize construction of a highway. 13 Kan. App. 2d at 320-21. On the issue of the dismissal of the City of Lawrence, the court found that the issue had not been briefed on appeal and was therefore waived or abandoned. 13 Kan. App. 2d at 322. The Court of Appeals found no abuse of discretion by the district court in its finding that Blevins' claim was barred by laches, nor did it find an abuse of discretion by the district court in denying Blevins' post-trial motions attacking the laches determination. 13 Kan. App. 2d at 322-23. We granted review.

The first issue is whether the trial court erred in upholding the legality of the County's issuance of general obligation bonds under its home rule authority to finance the by-pass highway.

Douglas County exercised its home rule powers pursuant to K.S.A. 19-101a(b) to issue general obligation bonds for the purpose of partially financing the construction of the South Lawrence Trafficway. K.S.A. 19-101a(b) provides:

"(b) Counties shall apply the powers of local legislation granted in subsection (a) by resolution of the board of county commissioners. *If no statutory authority exists for such local legislation other than that set forth in subsection (a) and the local legislation proposed under the authority of such subsection is not contrary to any act of the legislature,* such local legislation shall become effective upon passage of a resolution of the board and publication in the official county newspaper. If the legislation proposed by the board under authority of subsection (a) is contrary to an act of the legislature which is applicable to the particular county but not uniformly applicable to all counties, such legislation shall become effective by passage of a charter resolution in the manner provided in K.S.A. 19-101b, and amendments thereto."

K.S.A. 19-101a(a) and K.S.A. 19-101c provide broad grants of power to counties to enact local laws. K.S.A. 19-101a allows the board of county commissioners to transact all county business and perform powers of legislation; K.S.A. 19-101c directs that county home rule powers are to be liberally construed to give counties the largest measure of self-government. Although counties are empowered with a broad range of authority, the Kansas Legislature retains the authority to limit the exercise of home rule powers. Counties are prohibited from passing any legislation

which is contrary to or in conflict with any act of the state legislature which is of uniform application to all counties throughout the state. K.S.A. 19-101a(b); *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225, 227, 643 P.2d 188 (1982). County home rule powers are also subject to enumerated limitations, restrictions, or prohibitions passed by the legislature. K.S.A. 19-101a(a).

Blevins contends the home rule resolutions adopted by Douglas County are inconsistent and in conflict with K.S.A. 19-101a(b) because the County failed to follow the existing statutory authority. Blevins further argues the County ignored the clear statutory authority of K.S.A. 68-580 *et seq.* when it passed home rule resolutions duplicating the statutes but omitting the voting requirement. K.S.A. 68-580 *et seq.* provides that a county may designate and finance a primary or secondary arterial highway. K.S.A. 68-584 specifically authorizes a county to issue general obligation bonds to finance construction of a proposed highway; however, if the issue exceeds $1/2\%$ of the assessed tangible valuation of the county the issue must first be submitted to a vote for approval of a majority of the electors of the county. If the issue is within the $1/2\%$ it is subject to petition and referendum. One-half percent of Douglas County valuation was $1,010,000.

A comparison of K.S.A. 68-580 *et seq.* and Douglas County Resolutions Nos. HR 85-8-2, 85-41, and 85-42 reveals the statute was duplicated in both form and substance except for the changes which follow. The County resolutions authorize the "construction, reconstruction, repair or maintenance of a system of highways . . . to assist the flow of traffic in the County by bypassing cities." K.S.A. 68-581 provides authority for the County to designate as a primary arterial highway "[a]ll or any portion of an existing or proposed new county road or highway." Section 2 of Ordinance No. 5712 duplicates K.S.A. 68-584 but for the omission of voter approval on the issuance of general obligation bonds. The County reenacted K.S.A. 68-580 *et seq.* by resolution, merely changing the designation of the highway from "primary arterial" to "South Lawrence Trafficway" and omitting voter approval of the bond issue.

Douglas County asserts there is not a state statute applicable to the peculiar traffic problem in Lawrence and Douglas County and that it can therefore plan, construct, and finance the by-pass highway

under ordinary home rule resolution. The County makes numerous arguments in support of this position. Let us take up each argument and dispose of it separately. The County first contends no statutory authority exists for this project because the south Lawrence by-pass has not been designated as either a primary or secondary arterial highway. We disagree. The authority was given to the County to designate the desired trafficway as a primary or secondary arterial highway to set the stage for public financing. K.S.A. 68-151k defines county arterial highway as "essential and important routes or highways to connect with or to provide necessary access highways to or from the state highway system in such counties." This proposed highway qualifies as an arterial highway. Douglas County chose not to make the required designations. Rather it designated the proposed highway the South Lawrence Trafficway to try to extricate itself from the statute. A county cannot avoid the financing scheme of K.S.A. 68-584 merely by changing the designation of its proposed highway. The decision to designate a county highway as a primary or secondary arterial highway is discretionary, but if issuance of general obligation bonds is desired for construction of the highway, then designation of the highway as a primary or secondary arterial highway is a mandatory condition precedent thereto.

Next, the County and League of Kansas Municipalities as *amicus curiae* argue that the County is not required to follow the provisions of 68-580 *et seq.* because that statutory authority is permissive and thus is not the exclusive method by which a county can issue general obligation bonds. The County contends that K.S.A. 68-580 *et seq.* is permissive since the statute provides that a county *may* designate the proposed highway as a primary or secondary arterial highway. Since the County chose not to designate the South Lawrence Trafficway as an arterial highway, it claims it is not required to follow the other provisions found in those statutes. As we have already discussed, however, the language used in Resolution No. HR 85-8-2 in essence duplicated the provisions of 68-580 *et seq.* except for allowing the question of bond issuance to be voted upon. Once the County chose to issue general obligation bonds to fund construction of the highway, it was bound by the method of financing provided by the legislature in K.S.A. 68-584. K.S.A. 68-580 *et seq.* is optional in the sense that a county is not required to build a highway and issue general obligation bonds to finance it. But if the county decides

to build such a highway and issue general obligation bonds, then K.S.A. 68-580 *et seq.* is the exclusive method to accomplish that end. See *Smith v. State Highway Commission,* 185 Kan. 445, 447, 346 P.2d 259 (1959), where we stated:

"The Commission argues that it is not obligated to acquire rights of access by eminent domain or as otherwise provided in 68-1903, *supra* because this section of the statute uses the word 'may' with reference to the acquisition of the desired private or public property. This expression merely indicates that the highway authorities are not required to establish controlled access highways, but, if they do so, they may be acquired only as provided in the act."

This statute is uniformly applicable to all counties. See *Moore v. City of Lawrence,* 232 Kan. 353, 356-57, 654 P.2d 445 (1982).

The County next contends that, even if the state has enacted legislation which may apply to the designation and financing of county roads, the County is not deprived of power to deal with the same subject matter. For support, the County relies upon *City of Garden City v. Miller,* 181 Kan. 360, 366, 311 P.2d 306 (1957), in which this court stated:

"The fact that the state has enacted legislation on a subject does not necessarily deprive a city of the power to deal with the same subject by ordinance. [Citations omitted.] A municipality may legislate on the same subject so long as the municipal ordinance does not conflict with the state law [citations omitted], and if there is no conflict, both laws may stand."

Thus, Douglas County urges it may enact legislation even though the state has acted in the same area, as long as there is no conflict between the state and local legislation.

A conflict exists between state and local legislation when the local law prohibits what the state law authorizes or the state law prohibits what the local law permits. *Missouri Pacific Railroad v. Board of Greeley County Comm'rs,* 231 Kan. at 227; *City of Junction City v. Lee,* 216 Kan. 495, 501, 532 P.2d 1292 (1975).

The County argues there is no conflict in the present case because the state law, K.S.A. 68-580 *et seq.,* does not apply since it is discretionary and the County decided not to use it. As we discussed above, K.S.A. 68-580 *et seq.* is not permissive and does apply. It should also be noted that *City of Garden City v. Miller,* 181 Kan. 360, was decided prior to the adoption of the home rule statute, K.S.A. 19-101a, and thus it is irrelevant to the issue

of whether a county may utilize home rule power when statutory authority on the subject matter exists.

Preemption is the last point raised under this issue. The County relies upon the general rule that the legislature may reserve exclusive jurisdiction to regulate in a particular area and thus prevent a county from enacting local legislation on the same subject. *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. at 227. Douglas County contends, however, that legislative intent to preempt the area should be clearly evident before its right to exercise home rule is denied. *Moore v. City of Lawrence*, 232 Kan. at 357.

We reject this argument. K.S.A. 68-580 *et seq.* is the only statutory provision authorizing the issuance of general obligation bonds for highway construction by cities and counties. It is applicable to all counties. Therefore, it is the exclusive method provided for counties to build and finance highways by general obligation bonds.

We hold passage of the Douglas County home rule resolutions violated K.S.A. 19-101a(b). K.S.A. 68-580 *et seq.* provides the method cities and counties in Kansas must use if they desire to issue general obligation bonds for the construction of a highway. It is not permissive and has statewide application. The only permissive feature to the statute is that it does not require counties to build highways nor issue general obligation bonds to finance them. The requirement of a vote by the electorate on issuance of general obligation bonds has a long historical precedent in Kansas with its cash basis tradition. K.S.A. 68-580 *et seq.* is the legislature's recognition of that tradition, requiring the electorate's consent before a county can go into debt for highway construction.

The second issue is whether Blevins abandoned his appeal of the district court's dismissal of the City of Lawrence. Since the suit against the City is conceded by appellant to be moot, this issue requires no further discussion.

Blevins next contends the trial court abused its discretion in barring his claim on the ground of laches.

The doctrine of laches is an equitable principle designed to bar stale claims. *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1001, 667 P.2d 879 (1983). Relief is denied on the ground of laches when a party neglects to assert a right or claim

for an unreasonable and unexplained length of time and the lapse of time and other circumstances cause prejudice to the adverse party. *Capitol Fed'l Savings & Loan Ass'n v. Glenwood Manor, Inc.*, 235 Kan. 935, 938, 686 P.2d 853 (1984); *Kirsch v. City of Abilene*, 120 Kan. 749, 751-52, 244 Pac. 1054 (1926). The mere passage of time, however, is not enough to invoke the doctrine of laches. *Ten Eyck v. Harp*, 197 Kan. 529, 534, 419 P.2d 922 (1966). For laches to apply, the court must consider the circumstances surrounding the filing of the suit and any disadvantage to the other party caused by the plaintiff's delay. *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. at 1001; *Potucek v. Potucek*, 11 Kan. App. 2d 254, 260, 719 P.2d 14 (1986).

The district court believed Douglas County would suffer disadvantage and great loss if Blevins' claim for injunctive relief was granted. This conclusion was based on the finding that $213,793.70 had been expended on the project. The court also found the bonds could not be redeemed until 1997 and the bonds' proceeds could not be used for any other project. Blevins waited for two years after issuance of the bonds before bringing his suit. The court concluded a delay of two years before bringing suit worked a disadvantage on the County and permitted the expenditure of large sums of money.

Blevins asserts that granting his claim for relief would not cause great loss or disadvantage to the County and alleges the cases cited by the district court to support its holding are distinguishable. Specifically, Blevins contends the expenditure of $213,793.70 by the County does not support a finding of laches since 95% of the original $4,000,000 bonds issued for highway construction remain intact. He also asserts that the funds expended were spent on planning and other services, which were properly authorized expenditures under K.S.A. 68-580 *et seq.*

The district court found that *State, ex rel., v. Salome*, 169 Kan. 585, 220 P.2d 192 (1950), was analogous to the present case. In *Salome*, the court denied a writ of mandamus to compel repeal of resolutions to initiate a flood control project. 169 Kan. at 595. The court considered the impairment of contracts, the substantial amount of funds spent, and the fact that easements and rights of ways could not be used for any other purpose than that for which they were acquired. 169 Kan. at 592-94.

Blevins argues *Salome* is not analogous because it dealt with a statutorily authorized resolution, unlike the illegal resolution in this case. Blevins points out that $487,000 was spent on capital expenditures in *Salome,* while the County has spent zero dollars on capital expenses in this case.

Blevins next distinguishes the case of *State, ex rel., v. Paulsen,* 204 Kan. 857, 465 P.2d 982 (1970), relied upon by the district court. In *Paulsen,* the court held that laches barred a claim of mandamus to prohibit an urban renewal project. In denying the mandamus action, the court considered the fact that over two years had passed since the project was launched, more than $180,000 had been expended, contracts had been entered into with individuals, and the federal government and city actions in advancing the project had been well publicized. 204 Kan. at 863. Blevins points out that no contracts were entered into in this case and no capital expenditures have been made.

Furthermore, Blevins contends there is no support for the defense of laches because he had insufficient time to challenge the County's action after Resolution No. HR 85-8-2 was approved and before the bonds were issued.

The district court charged Blevins with knowledge of the County's plans to consider the highway project and issue bonds as early as June 1985. The district court held that Blevins was required to act before the bonds were issued, and any delay after issuance constituted laches.

Blevins claims the June notice charge is erroneous and unjust. He argues that prior to the issuance of Attorney General Op. No. 85-90, dated July 31, 1985, there was no apparent authority for the County to issue bonds without voter approval. Thus, July 31, 1985, was the earliest possible date of notice. The County, however, did not adopt the resolution authorizing the bond issuance until August 14, 1985. Blevins alleges he could not have acted prior to the adoption of the resolution because any action would have been deemed premature. The bonds were issued on August 29, 1985. Therefore, Blevins contends, he had two weeks in which to file his claim for relief, with only two weeks' previous notice.

Finally, Blevins alleges the district court placed a burden upon him to act swiftly, but failed to consider the inequitable behavior

of the County in hastily issuing the general obligation bonds in an action that was highly controversial. Blevins argues the County failed to allow adequate time after authorization and before issuance in which he could file suit. Therefore, the delay and possible disadvantage were not his fault; rather, they were due to the County's inequitable behavior.

Laches is the neglect to do in law, under circumstances requiring diligence, what should have been done. *Capitol Fed'l Savings & Loan Ass'n v. Glenwood Manor, Inc.*, 235 Kan. at 938. It is true Blevins' suit was not filed until two years after the bonds were issued and sold. But it is also true the bonds were issued and sold only two weeks after the adoption of the County resolutions authorizing their issuance. The rapidity of the transaction prevented Blevins from filing his lawsuit prior to the bond sale through no fault of his own. Thus, he did not fail to do that which he should have done.

The only change of position which has occurred subsequent to the bond sale is the expenditure by the County of $213,793.70 for planning. Planning expense is authorized by K.S.A. 68-585 and can be paid for from the county road fund. The detriment to the County from the expenditures is minimal.

Let us now discuss the problem of the uncallable feature of these bonds. Neither party to this action could advise us as to the interest being received from the invested bond proceeds. We take judicial notice that, during the period from August 1985 to the present, certificates of deposit yielded a higher rate of interest than did municipal bonds. Because a county has no income tax liability, the interest differential is profit to the county. Thus, Douglas County will suffer no financial loss from this transaction.

In the absence of a disadvantage to Douglas County by Blevins' delay in filing this action, his only time limitation was the statute of limitations, which was complied with. We hold the trial court abused its discretion in holding Blevins guilty of laches.

In light of this holding, we need not discuss the other issues raised. The judgments of the district court and the Court of Appeals are reversed, and judgment is entered for Leslie W. Blevins, Sr.

SIX, J., not participating.